THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM VERNOR, Defendant-Appellant.

Fifth District    No. 77-313

Opinion filed November 21, 1978.

APPEAL from the Circuit Court of Madison County; the Hon. JOHN DeLAURENTI, Judge, presiding.

Tyce S. Smith, of Waynesville, Missouri, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and John A. Clark, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This appeal involves the sole question of whether the classification of cocaine as a narcotic drug by the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1100 *et seq.*) is unreasonable and thus deprives defendant, William Vernor, of due process and the equal protection of the law in violation of the State and Federal constitutions. Defendant was charged in the circuit court of Madison County with unlawful delivery of less than 30 grams of a substance containing cocaine in violation of section 401(b) of the Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b)). Following a bench trial, defendant was found guilty as charged and was sentenced to a term of two to eight years imprisonment. Defendant brings this appeal.

The facts underlying the commission of the offense are not in dispute. On October 30, 1976, defendant sold four grams·of a substance containing cocaine to an undercover agent for the Metropolitan Enforcement Group of Southwestern Illinois, in return for $500. Thereafter, the instant charge was brought against defendant and he filed motions to dismiss on the same grounds herein raised. The issue was joined by the State and a lengthy evidentiary hearing was held wherein the testimony of experts in

the field of drugs and drug abuse was presented. Following the hearing, the lower court denied defendant's motions, concluding that:

> "This is a matter for the judgment of the legislature—and the legislature may well choose to re-evaluate the societal impact versus penalty relating to cocaine use, possession or delivery. However, even the existence of an honest conflict of serious opinion does not suffice to bring such matters with[in] the range of judicial cognizance. * * * [T]he mere fact that cocaine is not specifically a 'narcotic' in a medical or pharmacological sense does not make its classification with opiates inappropriate and automatically, necessarily arbitrary, unreasonable and unconstitutional."

Cocaine is listed in the Act as a Schedule II drug for the purposes of the Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1206.) Section 401 of the Act, under which provision defendant was convicted, prohibits the manufacture or delivery of controlled substances and provides for differing penalties depending on the amount and schedule of the substance involved in the violation thereof. Subsections (b) and (c) of section 401 divide Schedule II drugs, of less than specified amounts, on the basis of whether or not such substances are narcotic drugs and further provide for a greater penalty with respect to those that are. A separate provision in the Act defines "narcotic drugs" to mean opium, the opiates and coca leaves (from which cocaine is processed) and their derivatives, compounds and chemical analogs. (Ill. Rev. Stat. 1975, ch. 56½, par. 1102(aa).) Because the Act defines narcotic drugs to include cocaine, defendant was convicted under section 401(b), a Class 2 felony. Had cocaine not been so classified, defendant could only have been convicted under section 401(c), a Class 3 felony.

Because pharmacologically cocaine is not a narcotic drug, defendant essentially contends that the legislature's classification of it as such and the greater penalty arising therefrom is arbitrary and irrational.

At the hearing on defendant's motions to dismiss, Dr. Joel Fort and Dr. Ronald Siegel testified on behalf of defendant; Dr. Frank Mercer testified on behalf of the State. The following is a brief summary of the evidence presented.

It was undisputed that under the pharmacological definition of the term, cocaine is not a "narcotic drug." Cocaine is an alkaloid which is primarily obtained from the leaves of *Erythroxylon coca*, a species of plant indigenous to Peru, Bolivia and adjoining areas of South America. In that region, the drug has been in use for centuries to relieve fatigue, to increase productivity and to relieve boredom. Cocaine is a stimulant drug which excites the central nervous system. It also produces an increase in

the heart rate and blood pressure. Further, it increases mental alertness or wakefulness, and produces a psychological sense of well-being.

In this country the drug is generally used for social-recreational purposes. It has only a limited therapeutic use as a local anesthetic on tissues it directly touches in sufficient concentration. When it is purchased lawfully, it sells for approximately $20 per ounce; when it is purchased illegally, it sells for approximately $2,000 per ounce.

Cocaine users primarily take the drug by sniffing it through the nose. A less common method of use is by intravenous injection directly into the blood stream. The effects of the drug are rapid but of short duration lasting from 30 minutes to two hours.

Pharmacologically, the class of narcotic drugs consist of the opiates, such as heroin, morphine and other equivalents; however, the term has been popularly understood to include a broader range of drugs. Narcotic drugs, unlike cocaine, are depressants on the central nervous system and they tend to reduce or relieve pain while they produce drowsiness, stupor or sleep. They induce euphoria but also dampen the functioning of the brain and cause difficulty in carrying out skilled muscular activity. Narcotic drugs are physically addictive and are characterized by tolerance and withdrawal illness. Tolerance denotes the organism's adaptation to a drug thus requiring increasing doses over time to maintain the same effect from the drug. Withdrawal illness is a pattern of symptoms appearing when a drug is suddenly discontinued following prolonged usage. Narcotic drugs are also not self-limiting. Given an unlimited supply, a user will take the drug continuously.

All three witnesses agreed that in contrast to narcotic drugs, cocaine is not physically addictive. It is not generally associated with tolerance or withdrawal illness and it is a self-limiting drug. Given an unlimited supply of cocaine, a user will only consume a limited quantity thereof at any given time.

Furthermore, there is a cross-tolerance effect associated with the opiates. Any one opiate may be substituted by a user to suppress withdrawal illness caused by an abstinence from another. There is no cross-tolerance between cocaine and any of the opiates.

The defense witnesses stated that although no drug is harmless, cocaine is relatively safer to use and has less potential for abuse than heroin, morphine, and the barbiturates, amphetamines and a number of hallucinogens. Cocaine, however, is not a benign drug. Dr. Siegel stated that in a study of 62.9 million people from 1971 to 1976, 111 fatalities were associated in part to cocaine. Of these, 26 deaths were attributable solely to cocaine. When cocaine is taken intranasally, it can produce rhinitis. And when it is taken by intravenous injection, it can result in a variety of

problems normally arising from syringe usage. Prolonged use can result in toxic psychosis, hallucinations and other behavioral problems. One such hallucination described is formication, a tactile sensation. The defense witnesses described such adverse effects as being mild and as resulting only from excessive use. They further stated that cocaine does not itself lead to criminal or antisocial behavior. The State's witness stated that psychosis can result from cocaine usage and that users have been observed exhibiting aggressive or other antisocial behavior while under the influence of the drug. He further stated that the drug has a strong potential for abuse. All the witnesses agreed that while cocaine is not physically addictive, prolonged use of it does lead to psychological dependence or habituation. Further, all the witnesses agreed that cocaine usage should be subject to criminal sanction, but disagreed in their assessment of the drug's relative potential for harm compared with other drugs, and the appropriateness of the penalty provided therefore.

■■ There is a judicial obligation to insure that the legislature's power to classify has not been exercised arbitrarily and that a rational basis exists to justify a legislative classification. (*People v. McCabe*, 49 Ill. 2d 338, 275 N.E.2d 407.) In *McCabe*, our supreme court, by applying techniques of constitutional substantive review (see R. Turkington, *Equal Protection of the Laws in Illinois*, 25 DePaul Law Rev. 385, 410 (1976)), found a statutory classification of marijuana as a hard drug to be invalid. The guiding principles stated by the court are applicable herein:

> "[W]e must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. [Citations.] The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. [Citation.] If any state of facts may reasonably be conceived which would justify the classification, it must be upheld [citation]. The right of judicial questioning of a classification under the equal-protection clause is thus limited. As this court put it in *Thillens, Inc. v. Morey*, 11 Ill. 2d 579, 593, 'Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.' But it is required that there be a reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not." 49 Ill. 2d 338, 340-41, 275 N.E.2d 407, 409.

Defendant's argument that the classification of cocaine as a narcotic drug is invalid is premised on the evidence presented showing chemical, physiological, behavioral and toxicological dissimilarities between cocaine and its usage, and that of the opiates. In short, that cocaine is not in fact a narcotic drug. However, the court in *McCabe* while cognizant of this fact, nonetheless found in dicta that its classification with the opiates was not inappropriate. (See generally Annot., 50 A.L.R.3d 1164 (1973).) The court stated:

"Cocaine, which is placed with marijuana and the opiates in the Narcotic Drug Act, is a powerful stimulant, whereas the morphine-type drugs have a depressing action. Too, cocaine is further unlike the opiates in that it does not have effects of tolerance or physical dependence and abstention does not cause acute withdrawal symptoms. However, because of its potent nature, it induces intense physical and mental excitation and a marked reduction in normal inhibitions which often results in aggressive and even violent behavior. Intense hallucinations and paranoid delusions are common and, because of this, cocaine users frequently attempt to dilute the experience with a depressant such as heroin or morphine." (49 Ill. 2d at 343-44, 275 N.E.2d 407, 410.)

The court further found that there existed comparable "profound" ill effects, maximal compulsion to abuse, and criminal activity associated with cocaine and the opiates.

Relying on *McCabe*, the court in *People v. Villanueva*, 46 Ill. App. 3d 826, 361 N.E.2d 357, found the classification of cocaine as a narcotic drug not to be unreasonable and unconstitutional, stating: "The mere fact that a doctor has indicated that cocaine has properties which differ from the opiates does not establish invalidity of the classification. *Cf. United States v. Harper* (9th Cir. 1976), 530 F.2d 828." '46 Ill. App. 3d 826, 834, 361 N.E.2d 357, 363.

In the instant case, evidence was presented showing that prolonged cocaine usage can result in psychological dependency and a host of behavioral problems. A massive dosage could also result in death. Further, it was undisputed by defense experts in the lower court that in many respects, cocaine is physically and mentally destructive and thus properly a subject of criminal sanction. The only dispute was one of degree. The defense witnesses concluded that the adverse effects of the drug are usually mild and infrequent and that cocaine is generally safer to use than a wide variety of other drugs. These conclusions were controverted by the State's witness, and represent, at best, honest conflicts of serious opinion rather than settled statements of proven medical fact. In *State v. Erickson* (Alas. 1978), 574 P.2d 1, the Supreme Court of Alaska was confronted with a similar issue as that here raised.

Following a comprehensive review of relevant medical, scientific and social data, the court stated that although the question was a close one; "We conclude that there is ample, respectable scientific evidence of harm or potential harm from the use of cocaine to sustain the legislature's inclusion of cocaine in its classification of narcotics * * * ." 574 P.2d 1, 18.

■■ Moreover, although defendant's evidence in the lower court was primarily directed at a pharmacological assessment of cocaine usage, the legislative intent underlying the classification at issue is much broader than this aspect alone, and it includes consideration of the drug's harmful effect on the peace, health and welfare of society. (Ill. Rev. Stat. 1975, ch. 56½, par. 1100.) Too, it is pertinent to remember that defendant had not been convicted of the use or possession of cocaine but rather of the sale of a small amount of the substance. Strictly speaking, the question before us is one of the reasonableness of the statutory classification of the sale of a small amount of cocaine with the sale of a small amount of the opiates. The only evidence presented on this question was testimony that when bought legally, cocaine costs approximately $20 per ounce; but illegally, on the street, cocaine costs $2,000 per ounce. Further, in the instant case a mere four grams of cocaine was purchased for $500. From the apparent high profit of illegal drug-trafficking in cocaine, the legislature may have concluded that such is an inducement to organized crime, or that criminal violence and other social evils extend throughout all reaches of the cocaine distribution system in protection of the high profits generated thereby. These and other like considerations justify the classification of the sale of cocaine as or with the sale of narcotic drugs. In any event, the evidence presented concerning the question of societal harm from illegal drug-trafficking in cocaine is so limited as to lead us to conclude that defendant failed to meet his burden of showing that the legislative judgment was devoid of any rational basis.

Accordingly, the judgment entered by the circuit court of Madison County is affirmed.

Affirmed.

JONES and HICKMAN, JJ., concur.