THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LONNIE HACKETT, Defendant-Appellant.

Third District   Nos. 78-271, 78-273 cons.

Opinion filed October 25, 1979.

Robert Agostinelli and Gary R. Garretson, both of State Appellate Defender's Office, of Ottawa, for appellant.

John Clerkin, State's Attorney, of Macomb (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

These consolidated appeals involve two convictions of defendant Lonnie Hackett for the unlawful delivery of less than 30 grams of cocaine. As a result of these convictions, defendant was sentenced to a term of imprisonment of three years for each offense with the sentences to run concurrently.

Prior to trial, defendant filed a motion to dismiss, attacking the constitutionality of those sections of the Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½) which classify cocaine as a Schedule II narcotic substance on the ground that this classification violates the fifth and

fourteenth amendments of the United States Constitution and article I, sections 1 and 2 of the Illinois Constitution of 1970.

At the September 23, 1977, hearing on defendant's motion to dismiss, defendant called Dr. Marian Fischman, a psychologist at the University of Chicago, Billings Hospital, who is an expert in the area of human behavior pharmacology, *i.e.*, the effects of drugs on behavior. Specifically, since 1974 her work has involved cocaine research under a grant from the United States government. She testified in considerable detail to the nature and effects of various classes of mood-altering drugs, particularly cocaine which is classified as a stimulant.

She stated that cocaine is not a "narcotic drug" from either a medical or a pharmacological standpoint, repeated use does not lead to physical dependence, and the user does not experience withdrawal syndrome. Cocaine is most commonly ingested by sniffing "lines" in powder form through the nose with the effect lasting 40 to 60 minutes, and it also can be taken by intravenous injection with the effect lasting 20 to 30 minutes. Ingestion of cocaine causes people to be more active, restless, talkative, friendly, and even euphoric. It causes an increase in blood pressure, heart beat, respiration, and body temperature, and excessive amounts can be lethal. There is no firm evidence that cocaine use alone can cause psychosis. On the basis of her interviews with users, Dr. Fischman stated that cocaine is used recreationally in the United States, primarily as a group activity by middle class people, and it is very expensive with one gram costing $120. One gram is the equivalent of about 30 "lines." Cocaine is also used medically as a local anesthetic for eye and throat surgery. On the basis of her information she believes that cocaine users are not engaged in more criminal activity, other than illegal drug transactions, than are nonusers, and that most cocaine users also use other drugs, including alcohol, marijuana, or both. Users develop a tolerance with repeated use, thus requiring ever larger doses to get the desired effect.

After the State's Attorney's cross-examination, counsel for codefendant Gregory Bright asked Dr. Fischman to respond to a statement regarding the effects of cocaine from *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, a case in which the supreme court ruled that the classification of marijuana under the Narcotic Drug Act was unconstitutional. The statement was as follows:

"Cocaine, which is placed with marijuana and the opiates in the Narcotic Drug Act, is a powerful stimulant, whereas the morphine-type drugs have a depressing action. Too, cocaine is further unlike the opiates in that it does not have effects of tolerance or physical dependence and abstention does not cause acute withdrawal symptoms. However, because of its potent nature, it induces intense physical and mental excitation and a marked reduction in

normal inhibitions which often results in aggressive and even violent behavior. Intense hallucinations and paranoid delusions are common and, because of this, cocaine users frequently attempt to dilute the experience with a depressant such as heroin or morphine." (49 Ill. 2d 338, 343-44, 275 N.E.2d 407, 410.)

Dr. Fischman disagreed with several factors contained in the statement. She first disagreed with the statement that "cocaine is unlike the opiates in that it does not have effects of tolerance." Rather, Dr. Fischman reiterated that research is showing that tolerance development does occur with the repeated administration of cocaine. Secondly, although Dr. Fischman agreed that cocaine does induce intense physical and mental excitation, she disagreed with the statement in *McCabe* that cocaine causes "a marked reduction in normal inhibitions which often results in aggressive and even violent behavior and intense hallucinations and paranoid delusions are common," adding that there is no data to show that cocaine induces a marked reduction in normal inhibitions or causes violent behavior. She also stated that while it is possible that cocaine may cause psychosis, there had been no proof of cocaine psychosis. Finally, although she agreed that cocaine users do sometimes take heroin, she indicated that such combined use is not frequent since most cocaine users take the drug by nasal inhalation while those cocaine users who use heroin inject the drug intravenously.

Following additional redirect examination of Dr. Fischman by defendant's counsel, defendant introduced into evidence three affidavits from persons involved in cocaine research which corroborated Dr. Fischman's testimony. Also introduced into evidence was the National Institute on Drug Abuse Research, Monograph 13.

Neither the codefendant, Gregory Bright, nor the State introduced any additional evidence. After hearing arguments on the motion, the trial court took the matter under advisement, and on December 21, 1977, the court issued a letter of opinion finding that cocaine was not a narcotic drug, but denying defendant's motion to dismiss on the basis of *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, and *People v. Villanueva* (1977), 46 Ill. App. 3d 826, 361 N.E.2d 357.

At the sentencing hearing May 10, 1978, the court inquired whether defendant elected to be sentenced under the indeterminate sentencing provisions of the law in effect prior to February 1, 1978, or the determinate sentencing provisions of the law presently in effect. Defense counsel was asked if he had explained the differences between the two sentencing provisions to defendant, and counsel responded that he had done so. After defendant elected to be sentenced under the new law, he was appropriately sentenced.

Subsequently, defendant filed a motion in arrest of judgment which

alleged it was error for the trial court to deny the motion to dismiss. Based on the trial court's prior letter of opinion denying the motion to dismiss, the trial court also denied the motion in arrest of judgment.

Two issues are raised by defendant, the first of which is whether the classification of cocaine as a Schedule II narcotic substance results in an unconstitutionally arbitrary classification. While it is true that the Controlled Substances Act defines the term "narcotic drug" so as to include cocaine (Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)), the inclusion of cocaine in the list of Schedule II drugs does not appear to result from this erroneous definition. A number of controlled substances are included in the list of Schedule II drugs which are not included in the definition of the term "narcotic drug," including amphetamines. Ill. Rev. Stat. 1977, ch. 56½, par. 1206.

In defining the offense of delivery of a controlled substance, section 401(a)(2) of the Controlled Substances Act classifies 30 grams or more of a substance containing cocaine as a Class 1 felony (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(2)), and then provides for lower classifications, as follows:

"(b) any other amount of a controlled substance classified in Schedules I or II which is a narcotic drug is guilty of a Class 2 felony. * * *.

(c) any other amount of a controlled substance classified in Schedule I or II which is not a narcotic drug is guilty of a Class 3 felony. * * *." (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b), (c).)

Had cocaine not been defined as a narcotic drug, the delivery of less than 30 grams of cocaine would result in the imposition of a lesser sentence.

This court has previously determined that the classification of cocaine as a narcotic did not render section 401 invalid. (*People v. Villanueva* (1977), 46 Ill. App. 3d 826, 361 N.E.2d 357.) Defendant asks that this position be reconsidered in light of his witness' disagreement with that part of the discussion in *McCabe*, quoted earlier, which was the basis for the *Villanueva* decision.

Other courts have more recently considered this same issue and have concluded that the statute in question, or a similar statute, is not rendered unconstitutional by the inclusion of cocaine in the list of narcotic drugs. (*People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938; *People v. Vernor* (1978), 66 Ill. App. 3d 152, 383 N.E.2d 699; *People v. Davis* (1979), 92 Cal. App. 3d 250, 154 Cal. Rptr. 817.) This was also the conclusion in *State v. Erikson* (Alas. 1978), 574 P.2d 1, and *United States v. Harper* (9th Cir. 1976), 530 F.2d 828, *cert. denied* (1976), 429 U.S. 820, 50 L. Ed. 2d 80, 97 S. Ct. 66. Furthermore, in *McCabe*, the Illinois Supreme Court, in ruling the statutory classification of marijuana invalid, stated:

"In determining whether a statutory classification violates the

equal-protection clause, we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. [Citations.] The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. [Citation.] If any state of facts may reasonably be conceived which would justify the classification, it must be upheld [citation]. The right of judicial questioning of a classification under the equal-protection clause is thus limited." *People v. McCabe* (1971), 49 Ill. 2d 338, 340-41, 275 N.E.2d 407, 409.

The evidence presented in the trial court mainly concerned the pharmacological assessment of cocaine and the nature of its use, without indicating the effect of illegal trafficking in cocaine upon society. Since a major consideration of the legislature in classifying cocaine was the drug's harmful effect on the peace, health and welfare of society (Ill. Rev. Stat. 1977, ch. 56½, par. 1100), defendant's failure to establish that it is unreasonable to classify the sale of a small amount of cocaine with the sale of a small amount of the opiates is fatal to defendant's argument because the challenged statute relates to the *delivery* of controlled substances, not their use. Applicable here is the statement in *People v. Vernor* (1978), 66 Ill. App. 3d 152, 158, 383 N.E.2d 699, 703, as follows:

"From the apparent high profit of illegal drug-trafficking in cocaine, the legislature may have concluded that such is an inducement to organized crime, or that criminal violence and other social evils extend throughout all reaches of the cocaine distribution system in protection of the high profits generated thereby. These and other like considerations justify the classification of the sale of cocaine as or with the sale of narcotic drugs. In any event, the evidence presented concerning the question of societal harm from illegal drug-trafficking in cocaine is so limited as to lead us to conclude that defendant failed to meet his burden of showing that the legislative judgment was devoid of any rational basis."

■■ We therefore hold that the classification of cocaine as a narcotic does not invalidate section 401 of the Controlled Substances Act and that the trial court correctly denied defendant's motion to dismiss.

■■ As a second issue defendant argues that he was not given an opportunity to make a meaningful choice between the new and old sentencing acts because the trial court failed to inform him of the specific sentence it would impose under each act, failed to inform him of the differences between parole eligibility under the old act and the early release provision of the new act, and failed to inform him of the range of

sentences available under the new act. We have previously held that a defendant has no right to choose between specific sentences. (*People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554.) Since it is primarily the obligation of the defense counsel to advise a defendant of his alternatives (*People v. Peoples*), where the record establishes that a defendant has discussed the alternatives with his counsel, absent a contention of inadequacy of counsel or an indication in the record that a defendant misunderstood the consequences of his decision, no error will be ascribed to the failure of the trial court to inform the defendant of the range of sentences available under the law in effect after February 1, 1978.

In the case at bar, defense counsel stated that he had explained the alternatives to defendant. Defendant makes no claim of inadequacy of counsel nor does the record indicate defendant misunderstood the consequences of his decision. As a result, no error can be ascribed to the trial court's action.

Accordingly, the judgments of the Circuit Court of McDonough County are affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.