Larry Blane **HALL**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 779S184.

Supreme Court of Indiana.

May 20, 1980.

David J. Colman, Colman, Lowenthal, Loftman & Richardson, Bloomington, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On November 24, 1976, Larry Blane Hall was charged by information with seven counts relating to possession and dealing in controlled substances as follows: Count I, delivery of LSD, Counts II, III, and IV, delivery of cocaine, Count V, Possession with intent to deliver cocaine, Count VI, Possession with intent to deliver marijuana and Count VII, conspiracy to deliver cocaine. Appellant was arraigned on February 1, 1977, and pleaded not guilty on all

counts. He moved the court to dismiss Counts II, III, IV, V, and VI, of the information on August 12, 1977. The court heard evidence on his motion to dismiss and on October 24, 1977, this motion was denied. On October 31, 1977, the State moved to dismiss Count V, possession with intent to deliver cocaine, and this Count was dismissed. Hall had waived trial by jury and on November 9, 1977, the court found the defendant guilty of Counts I, II, III, and IV, and not guilty as to Counts VI and VII, of the Information. On December 8, 1977, Hall was sentenced to five (5) years imprisonment with all but one (1) year of that sentence suspended as to Count I; to five (5) years imprisonment with all but one (1) year of that sentence suspended as to Count III, to five (5) years imprisonment with all but one (1) year of that sentence suspended as to Count III; and to twenty (20) years imprisonment with the imposition and execution of that sentence suspended in total as to Count IV.

On appeal, appellant contends that the trial court erred in denying his motion to dismiss; in determining the sufficiency of the evidence, and claims that he was the victim of entrapment.

## I.

In his motion to dismiss, appellant attempted to present a constitutional challenge to the Indiana Controlled Substances Act, Ind.Code § 35–24.1–4.1–1 and 2 (Burns 1975). This motion referred to Counts II, III, and IV of the charging information which involved delivery of cocaine on separate occasions to a police informant. Appellant contends that the classification and punishment scheme regulating cocaine is arbitrary and irrational, claiming that the classification is a violation of procedural due process and that the punishment is cruel and unusual. He also claims that because cocaine is improperly listed in Schedule II of the Controlled Substances Act, arbitrarily and capriciously defining it as a narcotic, the definition and classification therefore denied the appellant equal protection of the law and due process of law.

On September 6 and 9, 1977, hearing was held on the motion to dismiss during which the defendant and expert witnesses, Ronald Siegel, a psychologist, and Joel Fort, a physician specializing in drug abuse, testified at great length. Their testimony covered an immense amount of data, clinical findings, and technical discussions on the effects of various substances. In brief, both experts characterized cocaine as a stimulant drug rather than as a narcotic depressant. These experts have testified in other cases cited in this opinion. Much of the expert testimony was set out at length in those opinions. We find it unnecessary to do so here. We do note, however, that the evidence presented is focused on presenting the major point that cocaine is not a narcotic by definition and that cocaine is a stimulant rather than a depressant. We would note that the testimony focused on what is called social or recreational use with the claim that this kind of use does not have the abuses that heavy use does. Much of the testimony compared cocaine use to the use of alcohol, tobacco and barbiturates. It was stated that alcohol, tobacco, and barbiturates account for most deaths and disabilities and on an imaginary scale of 1–10 of danger, those drugs would be a 9 or a 10, caffeine would be a 1 and cocaine would be a 4. Social or recreational use was also distinguished from medical use and it was stated that in the opinion of Dr. Joel Fort, he would call daily users not psychologically dependent users or compulsive users, but that he would call them daily users.

On September 16, 1977, the State filed a response to the defendant's motion to dismiss accompanied by a memorandum of law in support of the constitutionality of the statute and the classification of cocaine.

The trial court made findings of fact among which were that cocaine is actually a stimulant, not a depressant, and that on that basis, cocaine is not a narcotic and therefore is improperly classified as such under Ind.Code § 35–24.1–1–1(p)(4) (Burns 1975); that narcotic substances create physical dependence and withdrawal symptoms

and that cocaine is not physically addictive, but physical dependence is a factor in its use and abuse; that cocaine is a psychoactive substance and that scientific knowledge is limited in that the actual and potential hazards of cocaine use have not been fully explored. The court found that death from abuse can occur without a high degree of predictability. It was noted that desire to use the substance is especially strong, although it was not apparently physically addictive.

The trial court upheld the statute, the classification and the charges on the basis of the police power of the State to regulate potentially abusive substances and found that any mis-classification did not result in a violation of due process of law or of equal protection of the law, nor did any subsequent punishment result in cruel and unusual punishment. The court found that the legislature may attach such penalty or regulation as they may determine to be appropriate in furtherance of the purpose of proscribing the use and distribution of this substance.

 The law of this State clearly holds that the legislature has broad latitude in controlling conduct which is deemed dangerous to the general welfare of the community. In *Ross v. State*, (1977) Ind.App., 360 N.E.2d 1015, in rejecting a constitutional challenge to the classification of marijuana with "hard narcotic drugs" the Court of Appeals commented that since no facts were in evidence demonstrating conclusively that there was no rational basis for the classification of marijuana with certain other controlled drugs and substances, the court would defer to the expressed judgment of the legislature. Appellant, in this case has presented much evidence at trial in an attempt to present evidence that would prove that there was no rational basis for the classification of cocaine as a narcotic drug.

It appears that Indiana has not addressed the cocaine classification scheme directly. However, the appellate courts of Illinois have fully addressed the issue of classification of cocaine among the narcotic drugs

and have explicitly held that classification to be valid and constitutional despite the fact that, pharmacologically, cocaine is not a narcotic. In *People v. Villanueva*, (1977) 46 Ill.App.3d 826, 5 Ill.Dec. 218, 361 N.E.2d 357, the court held that there was no basis for the conclusion that classification of cocaine as a "narcotic" in that State's controlled substances act was either unreasonable or unconstitutional. The Illinois court relied on *People v. McCabe*, (1971) 49 Ill.2d 338, 340–341, 275 N.E.2d 407, 409, in which the court assessed the relevant, scientific, medical and social data and found that classification of marijuana as a narcotic was not a reasonable classification. However, in that decision the Illinois Supreme Court discussed cocaine and in doing so noted that: cocaine was a powerful stimulant and that it did not have the effects of tolerance or physical dependence and that abstention does not cause acute withdrawal symptoms. However, the court stated:

> "Cocaine, which is placed with marijuana and the opiates in the Narcotic Drug Act, is a powerful stimulant, whereas the morphine-type drugs have a depressing action. Too, cocaine is further unlike the opiates in that it does not have effects of tolerance or physical dependence and abstention does not cause acute withdrawal symptoms. However, because of its potent nature, it induces intense physical and mental excitation and a marked reduction in normal inhibitions which often results in aggressive and even violent behavior. Intense hallucinations and paranoid delusions are common and, because of this, cocaine users frequently attempt to dilute the experience with a depressant such as heroin or morphine."

*Id.* at 410. In conclusion, the Court in *Villanueva* found that:

> "In light of the determination and statements in the *McCabe* case as to the relevant scientific, medical and social data, we find no basis in the record for the conclusion that the classification of cocaine in the Illinois Controlled Substances Act is unreasonable and unconstitutional or violates the equal-protection clauses of the Federal and Illinois Constitutions."

*Villanueva* was followed by *People v. Vernor*, (1978) 66 Ill.App.3d 152, 22 Ill.Dec. 891, 383 N.E.2d 699, which held that even though cocaine is not a narcotic in the chemical sense that because of its debilitating nature it is "properly a subject of criminal sanction and that the legislative intent underlying classification is much broader than pharmacological assessment and includes considerations of a drug's harmful effect on society. In *People v. Vernor, supra,* Dr. Joel Fort, and Dr. Ronald Siegel testified on behalf of the defendant. These two witnesses are the same witnesses who testified in the present case before us. Much of the testimony presented is identical to that set out in *Vernor*.

The conclusions of the *Vernor* court were as follows:

"Evidence was presented showing that prolonged cocaine usage can result in psychological dependency and a host of behavioral problems. A massive dosage could also result in death. Further, it was undisputed by defense experts in the lower court that in many respects, cocaine is physically and mentally destructive and thus properly a subject of criminal sanction. The only dispute was one of degree. The defense witnesses concluded that the adverse effects of the drug are usually mild and infrequent and that cocaine is generally safer to use than a wide variety of other drugs. These conclusions were controverted by the State's witness, and represent, at best, honest conflicts of serious opinion rather than settled statements of proven medical fact. In *State v. Erickson,* (Alaska 1978) 574 P.2d 1, the Supreme Court of Alaska was confronted with a similar issue as that here raised. Following a comprehensive review of relevant medical, scientific and social data, the court stated that although the question was a close one; 'We conclude that there is ample, respectable scientific evidence of harm or potential harm from the use of cocaine to sustain the legislature's inclusion of cocaine in its classification of narcotics. * * * ' (574 P.2d at 18.)" 22 Ill.Dec. 891 at 894, 383 N.E.2d 699 at 702. Noting that the defendant in *Vernor* was charged with and convicted of the sale of cocaine, as was the appellant in the case before us, the court continued to discuss the criminal and social evils of the cocaine distribution system and commented that the legislature may have concluded that these considerations could support the legislature's classification of the sale of cocaine with the sale of narcotics. We agree with this conclusion. In *People v. Anderson,* (1979) 74 Ill.App.3d 363, 30 Ill.Dec. 173, 392 N.E.2d 938, the Illinois Appellate court was again presented with the issue of the classification of cocaine and arguments alleging violation of the due process or equal protection clauses of the United States and state constitutions. This case involved possession of cocaine and once again at a hearing upon a motion to dismiss, witnesses Joel Fort, M.D., and Ronald Siegel, Ph.D. testified as experts. The criteria provided in the Illinois statutes includes the same classification as that in the Indiana Statute under consideration here, namely that:

"(1) the substance has high potential for abuse;

(2) the substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and

(3) the abuse of the substance may lead to severe psychological or physiological dependence."

30 Ill.Dec. 173 at 176, 392 N.E.2d 938 at 941.

Citing again to *People v. McCabe,* (1971) 49 Ill.2d 338, 275 N.E.2d 407; *State v. Erickson,* (Alaska 1978) 574 P.2d 1; *People v. Vernor,* (1978) 66 Ill.App.3d 152, 22 Ill.Dec. 891, 383 N.E.2d 699, the court held that the challenged provisions were constitutional. In *People v. Hackett,* (1979) 77 Ill.App.3d 877, 33 Ill.Dec. 293, 396 N.E.2d 820, the defendant attacked the constitutionality of statutes classifying cocaine as a Schedule II narcotic substance on the ground that this classification violated the Fifth and Fourteenth Amendments of the United States Constitution and Article I, §§ 1 and 2 of the Illinois Constitution. Again, at a hearing

on defendant's motion to dismiss, Dr. Marian Fischman, a psychologist at the University of Chicago Billings Hospital, expert in human behavior pharmacology, testified as to the nature and effects of various mood altering drugs. Additional evidence by affidavit of three other persons involved in cocaine research were also introduced. The defendant in this case also raised the additional issue raised in the present case, that is, that had cocaine not been defined as a narcotic drug, the delivery of an amount of cocaine would result in the imposition of a lesser sentence. Relying on statements in *Vernor, supra,* regarding the dangers of drug trafficking and concluding that the defendant had failed to meet his burden of showing that the legislative judgment was devoid of any rational basis, the Illinois appellate court once again upheld the classification of cocaine.

In *United States v. Brookins,* (D.N.J. 1974) 383 F.Supp. 1212, and *United States v. Castro,* (N.D.Ill.1975) 401 F.Supp. 120, federal courts conceded cocaine was not a narcotic in the strict sense, but upheld the classification because of the societal harm of cocaine and found a rational basis for penal and regulatory purposes under the equal protection clause. The *Brookins* court emphasized that the legal classification of cocaine as a narcotic need not mirror its medical classification. The court held that the rational basis test was the appropriate standard as set forth in *United States v. Carolene Products,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed.2d 1234 (1938) as follows:

> Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. . . . But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either shown or which could reasonably be assumed affords support for it.

383 F.Supp. at 1215.

The *Brookins* court also considered and held that no fundamental rights were involved in the classification scheme.

In *United States v. DiLaura,* (D.Mass. 1974) 394 F.Supp. 770, the court held that classification of cocaine with narcotics was neither arbitrary or irrational on due process or equal protection grounds and that where cocaine has been shown to impose serious problems to the community that measures chosen by Congress or the legislature to deal with societal problems must be observed by the courts.

Appellant here contends that the rational basis test is an incorrect test to be used in the present case based on a finding by the trial court that the defendant's right of privacy had been violated. In its stated Conclusions of law, the trial court in paragraph 1 of its entry, responding to the defendant's substantive due process attack, found that this statutory scheme did violate the defendant's right of privacy, but that the constitutional infringement was justified as a proper exercise of police power in that it served a valid public purpose. Appellant contends that a valid public purpose is inadequate to outweigh the defendant's fundamental right to privacy and that therefore, the court must use a different standard to uphold the constitutionality of this classification. Appellant claims that the trial court failed to give sufficient weight to the defendant's privacy right. We note here that the trial court was in error in finding that the defendant's right to privacy was violated by this statute. The defendant cites no authority for his position that there is a fundamental right involved here requiring application of the highest "compelling" interest test or that such a test is the standard required. If there is any error on this issue, it is in the finding by the trial court that a fundamental right was involved. The issue here involves dealing in controlled substances and the proper test is of one of a rational basis

for the statutory classification. There was no error in refusing to grant the defendant's motion to dismiss on these grounds.

 Appellant also contends that the sentences involved violate the Eighth Amendment of the United States Constitution and violate the Indiana Constitution. He states that the Indiana Legislature has directed trial judges to sentence any person convicted of the delivery of a small amount of cocaine to an adult, to a period of five (5) years to twenty (20) years in prison. For delivery of over ten (10) grams, the penalty is twenty (20) years to life. Appellant contends that it is necessary to view the penalty provisions of Ind.Code § 35–24.1–4.-1–1 (Burns 1975) to determine whether these possible sentences are consistent with Article I, § 16 of the Indiana Constitution providing that cruel and unusual punishments shall not be inflicted and that all penalties shall be proportioned to the nature of the offense; and with Article I, § 18 of the Indiana Constitution which states that the penal code shall be founded on the principles of reformation, and not of vindictive justice.

Appellant acknowledges that federal courts have upheld the validity of long prison terms for drug offenses *citing Carmona v. Ward*, 576 F.2d 405 (2d Cir. 1978) and that when the challenged statute involves a sentence for a term of years rather than a life or a death sentence, that the proper Eighth Amendment test is whether the sentence is grossly disproportionate to the severity of the crime. Appellant claims that the Indiana constitutional requirements are more exacting regarding proportionality and the stated reformative purpose, and that this requires this Court to declare that defendant's conviction is invalid.

In a recent case involving the habitual criminal statute and a life sentence, in which it was found that that statute did not impose cruel and unusual punishment, we noted the general Eighth Amendment standards stated in *Hawkins v. State*, (1978) Ind., 378 N.E.2d 819, as follows:

"The Eight Amendment to the United States Constitution bans punishments which are either 'barbaric' or excessive in relation to the crime committed. *Coker v. Georgia*, (1977), 433 U.S. 584, 987 S.Ct. 2861, 53 L.Ed.2d 982. A punishment is excessive and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment such that it constitutes nothing more than purposeless and needless imposition of pain and suffering; or (2) *is grossly out of proportion to the severity of the crime. Gregg v. Georgia*, (1976) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859." *Id.* at 820–21 (emphasis added). Thus, under *Gregg v. Georgia, supra*, and *Hawkins v. State, supra*, one of the applicable Eighth Amendment tests demands proportionality between the punishment and the crime. Article one, section sixteen of the Indiana Constitution also requires penalties which are proportional to the nature of the offense. We think the standards to be applied under this provision should be the same as the second test under Eighth Amendment analysis. We can see no reason for creating a greater or lesser standard under article one, section sixteen when its language is so similar to the relevant Eighth Amendment standard."

*Norris v. State*, (1979) Ind., 394 N.E.2d 144 at 150. It appears clear that the legislature has determined that its purpose is to penalize more severely persons who deliver large amounts of cocaine than it penalizes those who deliver small amounts of cocaine. As we have stated previously, we see no reason for creating a greater or lesser standard under Article I § 16 of the Indiana Constitution than there is under the Eighth Amendment. We cannot say that these sentences are grossly out of proportion to the severity of these crimes.

 Finally, the contention that the penalty for dealing in cocaine is cruel and unusual punishment under the Eighth Amendment is a subjective appraisal, and is addressed to the wrong branch of government. *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352; *Ross v. State*, (1977) Ind.App., 360 N.E.2d 1015. There is no

error on this issue. Having reviewed all of the various claims of error alleged by appellant in regard to the denial of his motion to dismiss we restate that "every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary." *Sidle v. Majors*, (1976) Ind., 341 N.E.2d 763.

There has been no showing by appellant that the classification of cocaine under our statutes is invalid. There is no error in the denial of appellant's motion to dismiss.

## III.

■ Appellant's next allegation of error concerns his claim that the State did not satisfy its burden of proof as to each material element of the offenses alleged. This claim is again based on the fact that cocaine is not a narcotic in the pharmacological sense.

Appellant Hall was charged pursuant to Counts II, III, and IV, of the information with Delivery of Cocaine. The language in the information on these counts stated that "Larry Blane Hall did, on three different dates, knowingly, unlawfully and feloniously deliver to a confidential informant a controlled substance which is a narcotic drug classified in Schedule II of the Indiana Uniform Controlled Substances Act, namely, Cocaine. . . ." Appellant was charged in these three counts with delivery on different days for different amounts of cocaine. The material allegation required to sustain a conviction here is the illicit sale of cocaine, not a demonstration that cocaine is a narcotic. The State proved beyond a reasonable doubt that Larry Blane Hall sold packets of a substance later determined to be cocaine to an undercover informant, Michael Ross, without legal authority.

In *White v. State*, (1974) 161 Ind.App. 568, 316 N.E.2d 699, a conviction was reversed because the State failed to establish that the drug Methadone was a controlled substance under the act. However, the court pointed out that if a drug is identified by a name which is specifically designated as a narcotic by the controlled substances act that a conviction may be upheld merely by referring to the statutory definition and determining that a substance is a narcotic as a matter of law. The court went on to state that the prosecution must prove, as an essential element that the substance involved is a proscribed drug within the statutory definition and that this may be accomplished by either showing that the drug is specifically enumerated legally as a narcotic, or by chemically proving the substance to have the properties of a narcotic. This statute defines cocaine as a narcotic and this is sufficient to satisfy the burden of proving this element.

■ Appellant also alleges that the evidence was defective as to the amount of cocaine delivered which was the basis for Count IV. This issue was not raised in his motion to correct errors. However, since this claim relates to the sufficiency of the evidence, we will address it. *Guardiola v. State*, (1978) Ind., 375 N.E.2d 1105.

■ Appellant cites *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877, *trans. denied* Ind., 389 N.E.2d 270, in support of his claim that the controlled substance involved must be in excess of ten (10) grams and that the actual weight of the pure controlled substance, and not the aggregate weight of the exhibit, must be established beyond a reasonable doubt to have exceeded the weight designated by statute. We must disagree. *Hutcherson, supra,* involved a conviction based on constructive possession of heroin found in a cigarette package on a kitchen table. A chemist testified that the total weight of the brown powder inside the cigarette package was 10.98 grams and that the powder contained heroin. A quantitative test was not performed. The Court of Appeals held that the statute which provided that possession of a controlled narcotic substance is a felony punishable by a determinate term of imprisonment of not less than five (5) years nor more than twenty (20) years, if the amount of the controlled substance involved is an aggregate weight of ten (10) grams or more" requires proof of possession of more

than ten grams of pure heroin. The Court of Appeals ordered that judgment of conviction of possession of over ten grams of heroin be modified to that of possession of less than ten grams of heroin. However, in their interpretation of these statutes, the Court of Appeals distinguished between the statutory requirements regarding possession and those relating to dealing as follows:

> "We do not believe that the terms 'aggregate weight' in the statute penalizing possession were meant to include non-controlled substances. Rather, the language permits all the controlled substance found in an accused's possession to be weighed together for purposes of applying the penalty, regardless of whether it was found together or in smaller, separate amounts. Again, viewing the Controlled Substances Act as a whole confirms this interpretation. There is a clear pattern of specificity throughout the sections penalizing unlawful dealing. Unlike the unlawful possession sections, each expressly defines unlawful dealing in a controlled substance as involving the substance in question in its pure or adulterated form. See, e. g., IC 1971, 35–24.1–4.1–1 (Burns Code Ed.) ("a person is guilty of unlawful dealing in a controlled narcotic substance if he: (1) knowingly manufactures or delivers a controlled substance, pure or adulterated, classified in Schedule I or II which is a narcotic drug . . . .")

381 N.E.2d at 881.

This statute read as a whole intends to penalize delivery of a controlled substance in its pure or adulterated form.

 Five total counts involving cocaine delivery were leveled. Following the dismissal of Counts V and VII defendant was found guilty of Counts II, III, and IV. Of these, only Count IV involved a delivery of more than ten (10) grams of Cocaine. During testimony at trial, Fred Hutsell of the Indiana State Police appeared for the purpose of establishing the nature of the substance seized and the amount of Cocaine seized. After identifying the exhibits con-

taining the illegally delivered Cocaine, he described both the nature of the substance and the tests utilized in determining the type of drug contained in the exhibits. He described selection and purification techniques, and stated that he weighed the different packets of cocaine seized although he did not do a quantitative analysis to determine what proportion of the powder was pure cocaine. Hutsell found cocaine present in each of two packets designated Exhibit Four–B, in Exhibit Four–C and cocaine present Exhibit Seven–A. Exhibit Seven–A weighed approximately fifty-eight (58) grams and is the exhibit involved in Count IV of a delivery of more than ten (10) grams of cocaine. There is no inadequacy of the State's proof on this element.

### III.

Appellant's final contention is that he was the victim of entrapment. Appellant, Larry Blane Hall, testified that he was induced into the alleged transactions by the persistent solicitations of informant, Mike Ross. This testimony is in direct conflict with testimony of Mike Ross to the effect that he, Ross, had been talking to dealer Terry Arnold, when defendant Hall came on the line and asked if Ross was interested in buying some "acid." Appellant contends that this initial contact induced Hall and entrapped him into selling drugs, and contends that the following numerous dealings were tainted by this initial contact. Appellant relies on Medvid v. State, (1977) Ind. App., 359 N.E.2d 274, for his claim that this was no more than a sale of contraband made in response to a solicitation by a government agent, and that no evidence of predisposition on the part of the defendant to deal in drugs was in evidence, and therefore, entrapment should have been found as a matter of law.

Michael William Ross, the police informant, who was the recipient of the defendant's dealings testified that he had been trained in fighting illegal drug trafficking and had been involved in previous investigations. On November 1, 1976, Ross called dealer Terry Arnold, defendant's roommate,

to set up a buy. During this telephone conversation, defendant Hall came on the line and asked Ross if he was interested in buying some "acid." Subsequently, Ross, after discussing this with narcotics Detective Strange, set up the sale and went to one Chris LeMay's apartment. There Hall met the informant, ushered him into the apartment and delivered LSD to him, then, and on two subsequent occasions. On November 13, 1976, defendant Hall called Ross at his apartment and offered to sell him a quantity of cocaine. After receiving the "go ahead" from police, Ross went to Chris LeMay's apartment, monitored by a transmitter from an officer's car. Ross observed a portion of white powder, a razor blade and a mirror, lying on a coffee table. Ross handed $160.00 to defendant Hall, who counted it and gave it to one David Veal. Terry Arnold handed Ross some packets of the white powder. Ross left the premises and went directly to monitoring Officer Renfro, to whom he gave the packets of cocaine.

■ Here, the evidence most favorable to the State reveals that appellant Hall came on the telephone line and offered to sell LSD to informant Ross. That sale was set up and consummated as well as subsequent sales of other controlled substances at other times and in larger amounts. The initial offer and the sales reveal the predisposition and independent intent present in the appellant's mind when he called Ross at his home on November 13, 1976, and offered to sell cocaine. There is no showing that the accused was innocently lured and enticed to commit the illegal acts. *Gray v. State*, (1967) 249 Ind. 629, 634, 231 N.E.2d 793, 796.

There is ample evidence from which the court could find that the State met its burden in showing Appellant Hall actively initiated and consummated illicit sales with informant Ross and demonstrated that he was "ready, willing, and able" to make the initial and subsequent sales as the opportunity presented itself. *Henry v. State*, (1978) Ind., 379 N.E.2d 132 at 138.

There is no error on this issue.

Judgment affirmed.

GIVAN, C. J., and HUNTER, DeBRULER, and PRENTICE, JJ., concur.