THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANNY JOE McCARTY, Defendant-Appellant.

Fourth District    No. 16379

Opinion filed March 2, 1981.

Michael B. Metnick, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

The simple, uncontradicted scientific fact is: *Cocaine is not a narcotic.*

And the classification of cocaine as a "narcotic drug" is violative of equal protection.

McCarty was convicted by a jury of unlawful delivery of less than 30 grams of cocaine, in violation of section 401(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(b)). On appeal, he challenges the constitutionality of the classification of cocaine as a schedule II narcotic and the trial court's denial of his motion to suppress any in-court identification of him.

The statutory scheme challenged here can be summarized this way: The Controlled Substances Act includes the express intent to effectively acknowledge the functional and consequential differences between the various types of controlled substances and to provide for correspondingly different degrees of control over the various types. (Par. 1100(4).) To accomplish this goal, controlled substances are divided into five schedules, with schedule I drugs containing the highest potential for abuse. (Par. 1203.) Cocaine is placed within schedule II. (Par. 1206(b)(4).) The Act further distinguishes between narcotic and nonnarcotic controlled substances, with narcotic drug offenses carrying heavier penalties. (Pars. 1401(b) and 1401(c).) Cocaine is included within the statutory definition of "narcotic drug." (Par. 1102(aa)(4).) The classification of cocaine as a schedule II narcotic drug renders the offense of unlawful delivery of less than 30 grams of cocaine a Class 2 felony. Par. 1401(b).

Defendant filed a pretrial motion to dismiss the indictment, claiming section 401(b) of the Act is unconstitutional and that it violates the due process and equal protection clauses of the Federal and State constitutions.

### EXPERT EVIDENCE

Expert testimony was introduced in support of defendant's constitutional claims. Dr. Joel Fort is a physician with expertise in the areas of drug use and abuse, and Dr. Ronald Siegal is both a psychopharmacologist and a psychologist. Both witnesses fully qualify as experts as to the effects and characteristics of cocaine. No evidence on this question was submitted by the State.

There is no dispute within the scientific community that cocaine is not a narcotic. Cocaine is a stimulant and its physiological effects are to increase the heartbeat and blood pressure with average use. Psychologically, cocaine increases alertness and produces a feeling of pleasure.

Cocaine is not physically addicting. Drug addiction has two components—tolerance and withdrawal illness. "Tolerance" means that with continual use, the body requires more of a drug in order to obtain the effect the person is seeking. "Withdrawal illness" means that when the drug is withdrawn there are unpleasant symptoms such as cramping, nausea, perspiration and chills. Cocaine has neither of these characteristics. Cocaine is not generally harmful to the body, and the effect of the drug is shorter lasting than the effects of caffeine, nicotine or amphetamines.

There is no causal connection between the ingestion of cocaine and criminal behavior. Psychological dependency can result, but such dependency is mild and less than a person usually develops from tobacco. Cocaine does not create hallucinations, although perceptual distortion

occurs with a small number of users. It is the consensus within the scientific and medical community that cocaine is a drug with low abuse potential and not very dangerous.

Cocaine has currently accepted medical use in this country. It is used as a local anesthetic in ear, nose and throat surgery as well as dentistry. It is used clinically for treatment of chronic pain. Cocaine is cleanly metabolized and excreted from the body. The nonmedical use of cocaine does not produce any significant medical problem for the individual user. The consensus is that the risks and dangers of cocaine have been greatly exaggerated. The characteristics of the true narcotics are that they are related to the opium poppy, they are psychoactive depressants and they produce tolerance and withdrawal. But cocaine has none of these attributes.

Dr. Siegal offered the following explanation for the "misclassification" of cocaine. Cocaine was very popular in the latter part of the nineteenth century when it was used in medicines, syrups, lozenges, cigars, wines and liquors. There were no controls on the drug when the cocaine powder became available in the early twentieth century. At about that time a series of articles emerged in prestigious journals, attributing the raping of white women in the South to the cocaine-crazed Negro brain. Cocaine became a racist issue. At that same time, doctors were killing people accidentally by over-administering cocaine during minor surgery. Then, without any evidentiary hearing, the Harrison Narcotics Act of 1914 (ch. 1, 38 stat. 785 (1914)) became law. That law prohibited the use of cocaine and classified it as a narcotic. In 1970, the Comprehensive Drug Abuse Prevention and Control Act which involved the controlled substance schedules was introduced at the Federal level. (See 21 U.S.C. 801 *et seq.* (1976).) Again, without any evidentiary hearing, cocaine was listed in schedule II, where it remains today. 21 U.S.C. 812(b)(2) (1976).

## Equal Protection

Defendant argues the classification of cocaine as a schedule II narcotic is capricious, arbitrary and without a rational basis and therefore denies him equal protection. He claims cocaine is not a narcotic nor does it meet the criteria set forth for schedule II drugs. Defendant relies on *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, as support for his position.

In *McCabe*, our supreme court held that the classification of marijuana under the Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—1 *et seq.*) rather than the Drug Abuse Control Act (Ill. Rev. Stat. 1969, ch. 111½, par. 801 *et seq.*) was a deprivation of due process and equal

protection. The nature and effects of marijuana were found to be so similar to the drugs named in the Drug Abuse Control Act so as to place those convicted of the sale of each in a similarly situated class. The court found no rational basis for the classification, a consequence of which when first convicted of the sale of marijuana one must receive a sentence 10 times greater than one permitted to be imposed on one convicted of a sale of drugs under the Drug Abuse Act. Such disparity between penalties was ruled a violation of equal protection.

■■ Applying the rationale of *McCabe*, we rule the classification of cocaine as a "narcotic drug" within section 102(aa)(4) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1102(aa)(4)) violates the equal protection clause of the United States and Illinois constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) Cocaine is not a narcotic, and its classification as such is improper. Defendant, convicted of the unlawful delivery of cocaine, is similarly situated with those offenders convicted of delivering schedule II nonnarcotic drugs, such as amphetamines. Because cocaine is classified as a narcotic, the offense is classified as a Class 2 felony. (Par. 1401(b).) Unlawful delivery of a small amount of a schedule II nonnarcotic is a Class 3 felony. (Par. 1401(c).) There is no rational basis for the disparity in these penalties. The classification of cocaine as a narcotic has subjected defendant to a penalty out of proportion to the seriousness of the offense.

The State urges this court to follow our holding in *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938, wherein we rejected a similar challenge to the misclassification of cocaine. We are aware that these challenges have been rejected consistently by other Illinois courts (*People v. Hackett* (1979), 77 Ill. App. 3d 877, 396 N.E.2d 820; *People v. Vernor* (1978), 66 Ill. App. 3d 152, 383 N.E.2d 699) as well as other State and Federal courts (*e.g., State v. Erickson* (Alas. 1978), 574 P.2d 1; *United States v. Lustig* (9th Cir. 1977), 555 F.2d 737, *cert. denied* (1978), 434 U.S. 1045, 54 L. Ed. 2d 795, 98 S. Ct. 889).

It is apparent that knowledge of the effects of different substances was limited when our legislatures began controlling and prohibiting certain controlled substances. Based upon the knowledge available, the legislature rationally assumed that cocaine was a narcotic and classified and penalized it as such. But, the state of knowledge and research in physical science as to the effects of cocaine has advanced to the point that the true, proven facts now contradict those previously assumed facts. As such, the previous "rational" classification of cocaine as a narcotic is rendered irrational. The defendant herein has met the burden of showing the classification of cocaine is without a rational basis and that it violates his right to equal protection.

## CONSTITUTIONALITY

We reject, however, defendant's claim that the classification of cocaine as a schedule II controlled substance is unconstitutional. Although Dr. Siegal testified that cocaine is the least dangerous of those substances contained in schedule II, there is no evidence from which the effects of cocaine can be compared with schedules III or IV controlled substances. We agree with the State that cocaine's potential for abuse may be greater than schedule III substances, even though it is the least dangerous drug contained in schedule II. Defendant has not met his burden with respect to cocaine's classification as a schedule II controlled substance.

The invalidity of the classification of cocaine as a narcotic drug does not require reversal of defendant's conviction. The offensive classification is found in section 102(aa)(4) of the Act. This provision is easily severed without affecting the remaining portions of the Act. (See *People v. Nicks* (1976), 62 Ill. 2d 350, 342 N.E.2d 360; *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029 (dissenting opinion).) When this invalid provision is disregarded, the delivery of cocaine is still a criminal offense. (Par. 1401.) It is classified as a schedule II nonnarcotic, subject to the penalty provided in section 401(c). Defendant's conviction is simply reduced from a Class 2 felony to a Class 3 felony.

## IN-COURT I.D.

Defendant also filed a pretrial motion to suppress in-court identification of him by Officer Higgins because of a suggestive photographic identification made of defendant by Higgins two weeks after the sale. The sale in question took place at 10:16 p.m., on April 25, 1979, while Officer Higgins, an informant and an unidentified individual were sitting in an automobile parked on the street in front of 2125 East Adams in Springfield. The automobile was four or five houses from the corner of the block in a residential area. Outside lights were on the street corners. The seller came to the passenger's side of the automobile where Higgins was sitting, stood one foot from Higgins and told him to return in one-half hour. When Higgins returned, the seller stood on the driver's side of the automobile. Higgins recalled the informant telling him the seller's name was Danny McCarty. Although Higgins described the seller as having striking eyes, facial hair and a rough complexion, there is no description of the seller in the police report prepared the day after the sale. Two weeks after the sale a single photograph of defendant was shown to Higgins by special agent Bowman, and Higgins identified defendant as the seller.

■■ The trial court suppressed any reference to the suggestive photographic identification of defendant but denied the motion to suppress in-court identification, finding sufficient basis for identification independ-

ent of the photograph. The Supreme Court has upheld in-court identifications under similar facts. (See *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) We agree with the trial court that there was no likelihood of irreparable misidentification under these facts. See *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212.

Defendant's conviction is reduced from a Class 2 felony to a Class 3 felony. The cause is remanded for a resentencing of defendant.

GREEN and CRAVEN, JJ., concur.