THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT L. ANDERSON, Defendant-Appellant.

Fourth District   No. 15169

Opinion filed July 20, 1979.

CRAVEN, J., dissenting in part.

Follmer, West, Erdmann and Clem, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Marc D. Towler and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions upon jury verdicts and the several sentences imposed for unlawful possession of cannabis (2 to 6 years); possession of more than 500 grams of cannabis with intent to deliver (2 to 6 years); possession of more than 30 grams of cocaine (4 to 6 years); possession of more than 30 grams of cocaine with intent to deliver (4 to 6 years); possession of MDA (2 to 6 years) and possession of methaqualone (2 to 6 years). He also appeals from the order for the forfeiture of $15,000 seized during the course of a search under warrant.

The prosecution concedes that it was error to enter judgments and impose sentences of possession of marijuana and the possession of cocaine for the reason that they were included offenses as to the convictions upon the respective charges of possession with intent to deliver.

Upon appeal it is argued that the trial court erred in denying defendant's motion to dismiss the counts charging possession of cocaine with intent to deliver; in denying his motions to disclose the name of an informant and to hold an evidentiary hearing upon the veracity of the informant's statements set forth in the complaint for search warrant; and that the trial court erred in ordering the forfeiture of the sum of $15,000 which was seized.

On April 20, 1977, IBI agents, State and municipal police executed a search warrant upon the residence occupied by defendant. The substances seized during such search were identified as the controlled substances upon which the charges were framed.

Defendant filed a motion to dismiss the counts relating to the possession of cocaine asserting that the classification of cocaine in section 401 and 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401, 1402) is arbitrary and unreasonable and that the penalties provided for the possession of cocaine are so arbitrary and unreasonable as to deprive defendant of due process and equal protection

of the law under the Constitutions of the United States and the State of Illinois.

At a hearing upon that motion defendant introduced the testimony of Joel Fort, M.D., and Ronald Siegel, a Ph.D. specializing in psychology and psychopharmacology. The record sets out credentials as experts which were accepted by the trial court. The same witnesses also testified as experts in *People v. Vernor* (1978), 66 Ill. App. 3d 152, 383 N.E.2d 699. That opinion has set forth substantially the testimony given in this case, and we conclude that it is unnecessary to reiterate the details already stated in that opinion. The prosecution did not introduce evidence upon the issue or cross-examine the witnesses. Here, it is argued that under the rationale of *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, that court must hold the classification of cocaine as a narcotic drug and the penalty imposed for the possession and sale to be unconstitutional for the reason that it denies defendant equal protection of the law.

In *McCabe*, a statute then in effect classified marijuana as a narcotic drug, imposed a mandatory minimum sentence of 10 years and pro-hibited any probation where there was a sale. The text of the *McCabe* opinion suggests an extensive review of the literature and data upon the subject of controlled drugs from which the majority concluded that marijuana did not possess any of the characteristics and effects of true narcotics but rather the nature and quality of a depressant and stimulant drug specifically classified under the Drug Abuse Control Act with provisions for substantially lesser penalties. Upon such conclusion the court held that such classification and sanctions were arbitrary and unreasonable so that there was a deprivation of the equal protection of the law which made the marijuana provision unconstitutional.

The Illinois Controlled Substances Act considered here presents a different statutory structure from that in *McCabe*. It is true that section 102(aa)(4) (Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)(4)) defines cocaine as a "narcotic drug." One finds, however, that in establishing the criteria for the control of cocaine, that substance is classified for purposes of punishment with true narcotics and identified depressant and stimulant drugs. The criteria provided in section 205 of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1205), includes:

"(1) the substance has high potential for abuse;

(2) the substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and

(3) the abuse of the substance may lead to severe psychological or physiological dependence."

Much of the testimony in behalf of the defendant is directed to the proposition that it is pharmacological error to place cocaine in the

category of a narcotic or opiate depressant drug for the reason that it is an alkaloid stimulant which does not establish a physical dependence or addiction. The distinction was recognized in *McCabe*, and the testimony does not introduce new data.

Defendant's witnesses testified as to their opinions concerning the effect of occasional or "recreational use" as being relatively harmless compared to the effect of narcotic drugs. A reading of the testimony discloses that the witnesses were testifying from conclusions based upon their personal observations, rather than stating an existing consensus of scientific opinion or opinion based upon reasonable medical certainty. Dr. Fort agreed that within the medical scientific community there is disagreement as to whether the use of cocaine is relatively safe or dangerous, and that there is disagreement as to whether or not the use of cocaine brought about hallucinations. It was his opinion that cocaine use was not dangerous and did not produce hallucinations or brain damage, and that cocaine should not be classified with the stimulant amphetamine in the classification. Dr. Siegel testified to an opinion that cocaine should be classified with amphetamines as it presently is, rather than as a narcotic drug. It was his observation that there were some psychological sequelae of irritability and perceptual difficulties following the use of cocaine.

The trial court's memorandum opinion concluded that the issue was not one of "classification" as in *McCabe*, that the witnesses conceded that there was disagreement among scientific investigators as to the hazards and harm in the use of cocaine and that it was for the legislature rather than the judiciary to determine whether cocaine should be treated as a controlled substance. We agree.

Incident to the opinion in *McCabe*, the supreme court found that cocaine was a powerful stimulant producing marked physical and mental effects, aggressive behavior, hallucinations or delusions, and psychological dependence. The witness, Siegel, agreed at least in part.

In *State v. Erickson* (Alas. 1978), 574 P.2d 1, the Supreme Court of Alaska considered a statute which classified cocaine as a narcotic drug. The trial court had dismissed indictments for possession of cocaine for the reason that such classification brought about a deprivation of equal protection. The record contained testimony of some four witnesses and the affidavits of eight others whose opinions were considered as expert. The court's opinion discloses substantial investigation of current literature. That court's summary of the views concerning the qualities of cocaine substantiates the dicta in *McCabe* and enlarges the range of cocaine's effect by noting that:

> "[S]evere cocaine intoxication is self-induced when the intravenous route of administration is used and access to the drug is unlimited." 574 P.2d 1, 17.

That opinion refers to Peterson, History of Cocaine, National Institute on Drug Abuse, Research Monograph 13, *Cocaine: 1977*, 18 (1977), and states:

> "One of the most consistent findings is that prolonged and excessive use is associated with tactile hallucinations of animals, bugs or insects moving under the skin." 574 P.2d 1, 17.

The opinion in *Erickson* also quotes from Grinspoon and Bakalar, Cocaine: A Drug and Its Social Evolution (Basic Books 1976):

> " 'Considering only its psychopharmacological effects, we can say that cocaine certainly has some potential for producing crime and violence.' " 574 P.2d 1, 22.

Based upon the data examined the *Erickson* court concluded that the classification was not violative of equal protection or due process and reversed the trial court order which dismissed the indictment. In *United States v. Harper* (9th Cir. 1976), 530 F.2d 828, *cert. denied*, 429 U.S. 820, 50 L. Ed. 2d 80, 97 S. Ct. 66, it was determined that the classification of cocaine as a narcotic drug under the Comprehensive Drug Abuse and Control Act (21 U.S.C. §812 (1970)) was not arbitrary or irrational.

■■ Section 100 of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100) states the legislative intent, including:

> "4. [A]cknowledge the functional and consequential differences between the various types of controlled substances and provide for correspondingly different degrees of control over each of the various types; * * *."

We must presume that the provisions at issue were founded upon an adequate investigation of legislative facts. Legislative classifications are presumptively valid and the burden is upon the party challenging the classification to show that it is arbitrary and unreasonable. *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.

In *People v. Vernor* (1978), 66 Ill. App. 3d 152, 383 N.E.2d 699, the court considered the constitutionality of the provisions regarding cocaine upon the testimony of the witnesses who testified here and concluded that:

> "[T]he evidence presented concerning the question of societal harm from illegal drug-trafficking in cocaine is so limited as to lead us to conclude that defendant failed to meet his burden of showing that the legislative judgment was devoid of any rational basis." 66 Ill. App. 3d 152, 158, 383 N.E.2d 699, 703.

Upon the issue of whether legislation is reasonable or so arbitrary as to deprive one of the equal protection of the law, in *McCabe* the court stated:

> "[W]e must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the

party challenging the classification. [Citations.] The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. [Citation.] If any state of facts may reasonably be conceived which would justify the classification, it must be upheld [citation]. The right of judicial questioning of a classification under the equal-protection clause is thus limited. As this court put it in *Thillens, Inc. v. Morey*, 11 Ill. 2d 579, 593, 'Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.' * * *." 49 Ill. 2d 338, 340, 275 N.E.2d 407, 409.

■■ We must conclude that there is, in fact, an "[h]onest conflict of serious opinion * * *," and that this record does not justify judicial cognizance upon the issue presented. We hold that the challenged provisions are constitutional.

The complaint for search warrant was supported by the respective affidavits of an informant who signed under an assumed name, Bill Willis, Illinois State Police, and Angela Brough, a special agent of the Illinois Bureau of Investigation.

The affidavit of the informant set forth, in substantial detail, that the latter had advised Willis that defendant would sell cocaine to the informant and that between stated dates his clothes, person, and automobile were searched by Willis; that the informant went to defendant's residence at the stated address and purchased cocaine from defendant which was thereafter delivered to Willis. The affidavit of Willis stated the details of the search of the informant; the surveillance of the latter's car as driven to the defendant's residence; the surveillance of the rear entrance of the defendant's residence as the informant was inside it; that no other person entered during that time and the receipt from the informant of the substance which tested to be cocaine. The affidavit of Brough stated that she followed the informant's car as he drove to defendant's residence and that she observed informant enter it; that she watched the front entrance of the residence while the informant was there and no other person entered.

Defendant filed a motion to quash the search warrant and to suppress the evidence seized supported by his affidavit that he did not sell cocaine to the informant between the stated dates; that the house was green but incorrectly described in the complaint as white. Defendant did not deny

that the address was correctly stated and he did not deny that he occupied the residence.

The motion to quash was accompanied by a motion to require disclosure of the identity of the informant and went to hearing upon the allegation that material facts in the complaint were false and made with an intent to procure the issuance of a search warrant without sufficient probable cause.

The scheduled evidentiary hearing became diverted into colloquy and argument upon the scope and effect of *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The trial judge concluded that, as was argued by the State's Attorney, assuming that the affidavit of the informant concerning sale was false, nevertheless, the affidavits of Willis and Brough stated sufficient uncontroverted facts to establish probable cause to sustain the issuance of the search warrant of the residence. Incident to this issue, defendant argued that the informant should be identified so that he might have an opportunity to interrogate the informant to determine whether the affidavits of Willis and Brough were false. Disclosure was denied as the defendant was not charged with the sale alleged and the informant was not a witness to the search.

■■ The scope of *Franks* is stated to be narrowly limited both as to when a hearing upon defendant's allegations must be accorded, and when exclusion of the seized evidence is mandated. (438 U.S. 154, 155, 57 L. Ed. 2d 667, 669, 98 S. Ct. 2674, 2674-75.) The burden is upon the defendant to establish by a preponderance of the evidence the fact of perjury appearing in the complaint for search warrant (438 U.S. 154, 155, 57 L. Ed. 2d 667, 669, 98 S. Ct. 2674, 2674-75), through witnesses sworn or whose absence is satisfactorily explained (438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685).

The burden of going forward with the evidence of perjury is upon defendant, and:

> "The requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." 438 U.S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684.

■■ The showing of a single false fact (assuming that the house is green rather than white) does not mandate a hearing for:

> "[I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.

We agree with the trial court that probable cause to support the issuance of a search warrant was shown by the affidavits of Willis and

Brough detailing the strict search and surveillance of the informant and his return with a supply of cocaine. See *People v. Hall* (1979), 66 Ill. App. 3d 891, 384 N.E.2d 578.

■■ We do not agree with defendant's argument that his denial of the purchase of the cocaine by the informant as alleged in his affidavit constitutes a sufficient challenge to the credibility of Willis and Brough upon the hypothesis that they could not have received "that which defendant did not sell."

The acceptance of defendant's argument requires entire disregard of the burden of proof imposed upon the defendant in such proceedings for it was stated in *Franks*:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.

The stated purpose in *Franks* was to hold that the constitution forbade an "absolute ban" upon hearings as to the validity of the complaint for search warrant as had been held by the State courts, but the opinion clearly does not contemplate ordering routine hearings upon a denial of the matters alleged in the warrant complaint. We deem it that the defendant must allege facts rather than argumentative conclusions.

During the course of the search of the defendant's residence, $15,000 in currency was seized. One day prior to commencement of jury trial defendant filed a motion for the return of that sum. Three or four days following the return of the jury verdicts, the State's Attorney filed a motion to declare the sum forfeited as "[a] functional integral part in the offenses for which the defendant was found guilty." (See Ill. Rev. Stat. 1977, ch. 56½, par. 712(a)(4), and par. 1505(a)(4).) The currency was found in packets of $100 bills in a closet opening from a hall. The record contained evidence of the current prices for the several drugs as sold on the street. The search produced paraphernalia for weighing and packaging the controlled substances.

A hearing upon the respective motions was held subsequent to the return of the verdicts. The State's Attorney requested the trial court to take judicial notice of the evidence at trial. The defendant presented no evidence as to the origin, or a reason for so keeping the currency. The trial court denied defendant's motion for return of the money and granted the

motion for forfeiture upon oral findings that the record showed a substantial traffic in drugs and that the money was secreted in unusual amounts and in unusual places, all of which supported an inference that it was used in the buying and selling of the controlled substances.

■■ Defendant argues that the motion to declare forfeiture was not timely, citing *People ex rel. Ward v. 1963 Cadillac Coupe* (1967), 38 Ill. 2d 344, 347, 231 N.E.2d 445, as requiring that the State " 'shall *forthwith* bring an action for forfeiture.' " That opinion construed section 36—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 36—1). That statute was directed solely to the seizure of "[a]ny vessel, vehicle or aircraft," and specified times for the giving of notice and the filing of forfeiture proceedings. It is obviously not applicable here.

The sum of money was seized pursuant to the execution of a search warrant and returned into court under the provisions of section 108—10 of the Criminal Code of Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—10). Section 108—11 provides that the court before whom the item seized was returned shall enter an order providing for their custody pending further proceedings.

Sections 12(c) of the Cannabis Control Act and 505(c) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, pars. 712(c) and 1505(c)), are cited by defendant as requiring that proceedings for forfeiture "shall be instituted promptly." Such language, however, is limited to those instances where the property is seized "without process." (Ill. Rev. Stat. 1977, ch. 56½, pars. 712(b) and 1505(b).) In *People v. Apartment #16* (1977), 52 Ill. App. 3d 912, 368 N.E.2d 787, money of a defendant was seized pursuant to execution of a search warrant but no criminal proceedings had been instituted. For the latter reason, this court determined that the defendant could not obtain relief through a motion to suppress pursuant to section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12), and reversed the order of the trial court which had denied the return of the money. Here, defendant's motion to suppress was heard and was denied.

Defendant also argues that the State failed to prove by a preponderance of the evidence that the money was used in committing the violations charged (Ill. Rev. Stat. 1977, ch. 56½, par. 712(a)(4), and par. 1505(a)(4)). He cites *People v. Snyder* (1977), 52 Ill. App. 3d 612, 367 N.E.2d 752, and argues that that opinion was decided upon the fact that an account book was found with the money, but that no such account book was found here and that we must reverse. We do not agree. *Snyder* determined that a charge of delivery of a controlled substance:

> "* * * explicitly recognizes that a marijuana delivery may often involve monetary or other consideration passing in exchange for the marijuana. [Citations.] Thus money may in particular

circumstances be an integral part of the offense of possession of marijuana with intent to deliver." 52 Ill. App. 3d 612, 614, 367 N.E.2d 752, 754.

The *Snyder* opinion noted the quantity of the substances found and the presence of paraphernalia for weighing, pricing, and packing the substance. While it was stated that the account book "clearly demonstrated" the connection of the money with the offense, the opinion does not reject the remainder of the evidence as *prima facie* evidence sufficient to establish the connection between the money and the offense. *Snyder* held that defendant had the burden of proof to show what portion of the money seized was not related to the violation. We hold that in the absence of any countervailing evidence, the determination of the trial court is not contrary to the manifest weight of the evidence.

The prosecution has conceded that the convictions of unlawful possession of cocaine and the unlawful possession of marijuana were improperly entered. Those convictions are reversed and the cause is remanded with direction to enter an amended mittimus. The remaining judgments of convictions and the sentences imposed are affirmed.

Affirmed in part; reversed in part, and remanded with directions.

MILLS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting in part:

The classification of cocaine as a narcotic under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100 *et seq.*) is unreasonable in light of the current medical and pharmacological knowledge and thus deprives defendant of equal protection. On this basis, I dissent.

As recognized in *State v. Erickson* (Alas. 1978), 574 P.2d 1, it is undisputed that cocaine is not a narcotic under the pharmacological definition of the term. The harsh penalties imposed under the Act for cocaine violations result from its classification as a narcotic drug. Such a legislative classification has no rational basis and should not be upheld against the constitutional challenge presented.

Because there is a conflict of opinion concerning the effects of cocaine use, the majority concludes that defendant's constitutional challenge to the classification of cocaine must be rejected. There is, however, no conflict of opinion on whether or not cocaine is a narcotic. It undisputably is not. Research reveals that cocaine was misclassified as a narcotic in the Harrison Narcotics Act of 1914 (ch. 1, 38 stat. 785 (1914)) and has been so classified ever since. See E. Brecher and Consumer Reports, Licit and Illicit Drugs 271 (1972), and G. McLaughlin, *Cocaine*:

*The History and Regulation of a Dangerous Drug,* 58 Cornell L. Rev. 537 (1973).

This case presents the same problem with the classification of cocaine as *People v. McCabe* (1971), 49 Ill. 2d 338, 341, 275 N.E.2d 407, 409, presented with the classification of marijuana:

> "Appropriate respect should be given to the fact of a legislative classification, but there is a judicial obligation to insure that the power to classify has not been exercised arbitrarily and, if it has been, the legislation cannot be justified under the label of 'classification.' "

Here, a nonnarcotic is classified as a narcotic. There is a judicial obligation to state that such an Orwellian classification cannot be justified.

Both cocaine and amphetamines are classified as Schedule II drugs under the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1977, ch. 56½, par. 1206.) Cocaine, however, is classified as a narcotic whereas the amphetamines are not. (Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)(4).) Under sections 401(a) and 402(a) of the Act, possession of only 30 grams of cocaine is penalized as a Class I felony. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(a) and 1402(a).) In contrast, possession of 200 grams of amphetamines is required before it is penalized as a Class I felony. Furthermore, in section 401(b), the delivery of any lesser amount of a narcotic drug is a Class 2 felony, whereas in section 401(c) the delivery of any lesser amount of a nonnarcotic drug is a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(b), 1401(c).) Clearly, the legislative intent is to penalize the narcotic violations more severely than those violations involving nonnarcotics.

Although cocaine may be classified and penalized as a nonnarcotic controlled substance, there is no rational basis for the classification of cocaine as a narcotic drug. The legislative classification fails under the equal protection provision of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.