THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD COLEMAN, Defendant-Appellant.

First District (4th Division)    No. 79-1532

Opinion filed December 18, 1980.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

Donald Coleman, *pro se*.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and James R. Carroll, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant Donald Coleman was charged in four informations with possession of cocaine, PCP, heroin, and 1910 grams of marijuana. Following a jury trial in which he represented himself,[1] he was convicted of possession of marijuana but acquitted on the other three charges. Defendant was sentenced to a term of two to six years to run consecutively with a sentence he was serving for a prior unrelated offense.

On appeal defendant makes the following contentions: (1) the trial court erred in denying without a full evidentiary hearing defendant's motion to quash his arrest and suppress evidence; (2) the State failed to provide a proper evidentiary foundation for admission of the marijuana defendant allegedly possessed; (3) the State failed to prove that defendant possessed the marijuana; (4) the trial court erred in permitting the State to amend its answer to discovery on the day of trial to include a food stamp card belonging to defendant which was seized at the time of his arrest; (5) defendant's sentence should not have been made consecutive to his prior sentence.

We affirm.

We summarize the relevant evidence presented at trial. Officer Lovejoy Foster testified that at about 3 a.m. on June 19, 1975, he and four other police officers executed a search warrant for apartment 405 of a

---

[1] The record indicates that on the court's instruction two assistant public defenders were present during trial for any advice or aid the defendant might seek. After defendant's conviction, one of those attorneys was appointed at his request to represent him on post-trial matters including his sentencing hearing.

hotel at 6434 South Cottage Grove in Chicago. Two officers, Clarence Travis and Richard Peck, waited outside below the apartment's windows while the other three knocked on the door. A woman later identified as Barbara Williams opened the door but then attempted to close it after the officers announced their office and purpose. They forced open the door and then pried open the bars that were blocking the entrance. Foster recalled that there were lights on in the apartment and he could see the defendant lying in bed. Foster was the first to enter and as he did so he saw the defendant move toward a window and then throw a "package" out the window. Foster looked out the window and saw Officers Peck and Travis standing at a second level on a garage roof below the window. One of them told Foster "We have it." Foster placed defendant under arrest and observed Officer Leon Allen, who had accompanied him into the apartment, pulling Barbara Williams from the bathroom. In a search of the apartment a number of plastic and tin foil packages were found on a dresser along with an Illinois Department of Public Aid food stamp card bearing defendant's name and the address 6434 South Cottage Grove. Subsequent testimony by police chemist William Tyrrell established that these items included quantities of cocaine, heroin, and PCP.

Officer Allen testified that when he entered the apartment behind Officer Foster he observed Barbara Williams running to the bathroom with a bag. He entered the bathroom and found she had thrown a quantity of green crushed plant into the commode. He used a strainer to collect this material. Allen brought Williams out of the bathroom and saw Foster bringing defendant from the window. Officers Travis and Peck came upstairs to the apartment and said they had the contraband defendant had thrown out the window. They were carrying a large brown paper bag which was found to contain two packages. Peck tore the end off one package and they observed a green crushed plant substance inside.

At trial Officer Foster identified the bag and the packages that had been inside. He testified that these items had been taken to the area police station, inventoried, and then were taken to the police crime laboratory. Foster also testified that he subsequently picked up these items from the laboratory and brought them to court. A police chemist, Gerald Pazin, testified that he supervised an aide who tested the substance found in the bag and determined it to be 1910 grams of marijuana. When the bag was brought to the laboratory it was sealed, and it was again sealed after the tests were completed. In court Pazin identified the laboratory markings placed on the bags.

Officers Peck and Travis, who Officer Foster testified were on annual furlough at the time of trial, did not testify.

Thomas White, the manager of the Mansfield Hotel at 6434 South

Cottage Grove, testified that in June 1975 defendant received mail at the hotel and was living in apartment 405. However he also testified that the apartment was rented to another man named Campbell, not to the defendant. Officer Foster had testified on this issue that although a police report gave another address for the defendant, the defendant had told him his address was 6434 South Cottage Grove. Foster also testified that hotel personnel told the police the room was rented to the defendant.

Barbara Williams was the sole witness presented by the defendant. She testified that she was arrested at the Mansfield Hotel on June 19, 1975, and subsequently pleaded guilty to possession of marijuana. She had lived there "sometimes" and had been living there "previously" with James Campbell. On direct examination she stated defendant did not live in the apartment, but on cross-examination she variously testified that defendant lived there, stayed there, and came over "practically every evening." She denied seeing drugs in the apartment other than the marijuana she placed in the toilet. She stated she did not know anything about defendant throwing marijuana out the window. Williams stated she had been using heroin for a year prior to trial.

## I.

■■ Defendant first contends that under the holding of *Franks v. Delaware* (1978), 438 U. S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, he was entitled to a full evidentiary hearing on his motion to quash his arrest and suppress evidence.

In *Franks* the United States Supreme Court held that under certain circumstances a defendant must be permitted an evidentiary hearing in which he could seek to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. The court succinctly stated the applicable standards:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental

informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." (438 U. S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.)

Assuming that a hearing were required, the court further stated:

"In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U. S. 154, 156, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2677.

In this cause the affidavit at issue was that of Officer Lovejoy Foster. He stated in his sworn complaint for search warrant that he was relying on information supplied by an unidentified informant whom he had known for three years. In the past six months the informant had supplied Foster on eight occasions with information concerning narcotics law violations; on each occasion Foster made at least one arrest and recovered various drugs or narcotics paraphernalia. Five convictions had resulted; two cases were dismissed, and one was pending. The informant told Foster that on June 18, 1975, at about 10 a.m. he purchased a $30 bag of heroin from the defendant in apartment 405 of the Mansfield Hotel. The informant stated that when he left the apartment he injected the substance into his vein and knew from previous experience with the drug that it was heroin. He also told Foster that he had purchased heroin from the defendant in the same apartment on 10 separate occasions within the previous two weeks. The search warrant was issued and was executed at the apartment on June 19, 1975.

The trial court apparently accepted defendant's oral offer of proof as to what he would testify concerning the affidavit in lieu of any actual affidavit from the defendant. Defendant stated that he was prepared to state under oath that he had never sold drugs to anyone and that the alleged informant did not exist. The court held that no substantial preliminary showing of falsity of the affidavit had been made and therefore no hearing was required, nor was the State required to produce the informant as defendant had also requested.

We concur in the determination of the trial court. To require a full evidentiary hearing in which the supporting affidavit for a warrant would

be challenged solely on the basis of an unsupported denial by a defendant of crucial facts in that affidavit would effectively permit a challenge in every case. That was not the intent of *Franks.* That court emphasized that "[t]he requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." 438 U. S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684.

An analogous Illinois case is that of *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938. There the complaint for search warrant was supported by the affidavits of the informant, who used an assumed name, and two law enforcement officers. The informant's affidavit stated that he had informed the authorities that the defendant would sell cocaine to him; he and his car were searched before entering the defendant's residence, and he then purchased the cocaine and turned it over to the authorities. The affidavits of the officers stated that the informant was searched before entering the residence; no one else entered while the informant was inside, and the informant subsequently emerged with a substance determined to be cocaine. The defendant challenged these affidavits with one of his own in which he denied having sold cocaine to the informant on the relevant dates and also alleged that the home's color was incorrectly described in the affidavits. Defendant argued in part that his denial of the cocaine transaction constituted a sufficient challenge to the credibility of the two law enforcement officers who claimed to have received the cocaine from the informant. The court rejected that contention, stating that:

> "[*Franks*] clearly does not contemplate ordering routine hearings upon a denial of the matters alleged in the warrant complaint. We deem it that the defendant must allege facts rather than argumentative conclusions." 74 Ill. App. 3d 363, 370, 392 N.E.2d 938, 944.

In this cause the defendant's allegations are more sweeping; he asserts that no informant exists. But as in *Anderson* he supports that contention only with the bare assertion that he never sold drugs. This is not the substantial preliminary showing of falsity or reckless disregard of truth contemplated by *Franks.* The trial court correctly held that no evidentiary hearing was required by these allegations. Because this preliminary showing was not made, we do not reach the issue of whether as part of such a hearing the informant should be produced or his name disclosed to the court. See *Franks v. Delaware* (1978), 438 U. S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684.

## II.

■■ Defendant also contends that the State failed to provide sufficient evidence of a continuous chain of possession of the marijuana after its seizure so as to permit its admission into evidence. The marijuana was

admitted into evidence without objection from defendant at trial, and he has accordingly waived the issue on appeal. *People v. Polk* (1960), 19 Ill. 2d 310, 167 N.E.2d 185; *People v. Acevedo* (1976), 40 Ill. App. 3d 105, 351 N.E.2d 359.

But even were we to consider the issue on its merits we would find no basis for excluding the evidence. The State does have the burden of showing a continuous chain of possession in order to establish a foundation for admission of such evidence. (*People v. Cain* (1966), 35 Ill. 2d 184, 220 N.E.2d 195, *cert. denied* (1967), 385 U. S. 1042, 17 L. Ed. 2d 686, 87 S. Ct. 781.) But this does not impose on the State the burden of excluding any possibility of tampering; in the absence of any tangible suggestion of such tampering they must only establish the reasonable probability that the evidence has not been changed in any significant respect. *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923; *People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710.

Here Officer Foster testified that he saw the defendant throw an object out of a window of the apartment. He looked out the window and saw Officers Peck and Travis, who were standing on a garage roof three stories below, holding a large bag. One of them said "We have it." According to Officers Foster and Allen those two officers then brought the bag up to the apartment where it was opened and two wrapped packages were observed inside it. Allen testified that Peck tore the end off one of the packages, and they observed a green crushed plant substance within. Foster testified that that bag and its contents were inventoried and taken to the police crime laboratory. At trial he identified the brown paper bag and the two packages inside as being the ones he had recovered at the apartment and that he had subsequently picked up from the crime laboratory and taken to court. The police chemist who supervised the analysis of the substance testified that he had received the paper bag, which contained the other two packages, in a sealed condition. The bag was again sealed after analysis of its contents. In court the chemist identified the laboratory markings that he had placed on the bags.

Defendant notes two discrepancies in the chain of the possession. The first is the fact that neither of the two officers who allegedly caught the bag and brought it upstairs testified at trial. This absence was explained at trial as due to the officers being on annual furlough. We have noted that defendant failed to object to admission of this evidence on this ground at trial. In any event the testimony of Officer Foster that he saw the bag thrown out of the window and looked below to see those officers holding the bag, and the testimony of Officers Foster and Allen that the officers then brought the bag up to the apartment provided an adequate account of the chain of possession. Defendant also observes that Officer Foster testified the brown bag was opened at the apartment whereas the

chemist received the bag in a sealed condition. We do not find this to be evidence of tampering; rather, it indicates that care was taken to preserve the contents. Indeed, had the bag been left unsealed defendant might well have cited that fact as evidence of the possibility of tampering. The testimony we have summarized adequately established a chain of possession of the evidence sufficient to permit its introduction into evidence.

### III.

Defendant next contends that he was not proven to be in possession, actual or constructive, of the marijuana. He focuses on the conflicting evidence concerning his residence in the apartment. But this ignores the testimony of Officer Foster that he saw the defendant throw out the window the package which was subsequently determined to contain the marijuana. This was evidence of actual physical possession which, if believed by the jury, negated any requirement of establishing constructive possession. Although, as defendant notes, Officer Allen did not corroborate this aspect of Foster's testimony, neither did he contradict it. He merely testified that he entered the apartment after Foster and immediately pursued Barbara Williams into the bathroom. Because this testimony by Foster amply supports a finding of actual possession of the marijuana, we need not reach defendant's contentions concerning the insufficiency of the State's evidence concerning his residence in the apartment.

### IV.

On the day of trial but before its commencement the State was permitted, over defendant's objection, to amend its answer to discovery to include a food stamp card belonging to the defendant which had been recovered in the apartment at the time of defendant's arrest. That card was subsequently introduced into evidence. Defendant contends that the trial court erred in permitting the amendment and subsequent introduction of evidence.

Supreme Court Rule 412 requires the State, upon written motion of defense counsel, to disclose any papers obtained from or belonging to the accused. (Ill. Rev. Stat. 1979, ch. 110A. par. 412(a)(v).) However, where there has been no showing of surprise of prejudice the trial court may in its discretion permit the introduction of evidence not disclosed to defendant by the State during discovery. *People v. Acevedo* (1976), 40 Ill. App. 3d 105, 351 N.E.2d 359.

Here the State explained to the court that they had only discovered the card, stapled to a police officer's file, on the day of trial. Apparently the card had not been listed by the police in any police reports. The court stated that it would consider any request by defendant for additional time

to prepare a defense to this additional evidence, but no such request was made. Nor did defendant allege prejudice or surprise as a result of the late disclosure. Indeed the absence of prejudice is evident from the fact that the evidence related almost solely to the issue of defendant's residence in the apartment. This was a fact sought to be proved in connection with the State's effort to prove constructive possession of the drugs found in the apartment. Clearly the jury rejected this evidence, as they acquitted defendant of all charges for possession of drugs other than the marijuana, which as we have noted he was shown to have physically possessed. The only other use of this evidence, also unsuccessful, was the State's hypothesis in final argument to the jury that the discovery of the card with the drugs on the dresser indicated defendant may have removed all those items from his pockets before going to bed, thus establishing actual possession. The jury's verdicts established the absence of prejudice resulting from this evidence. We find no error in the court's ruling on this issue.

## V.

■ Finally defendant contends that the trial court erred in making his sentence consecutive to a term which he was serving at the time of his conviction. The guidelines for imposition of consecutive sentences are set forth in section 5—8—4(b) of the Unified Code of Corrections:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).)

Here, the trial judge did explain the basis for his sentence. He stated that he did take into consideration the sole mitigating factor cited by defendant's attorney at trial. But the judge noted that the decisive factors for him were defendant's three prior felony convictions. Defendant had been convicted of attempt murder and armed robbery in 1972, and at the time of trial was serving another sentence for unlawful restraint. The determination that a consecutive sentence should be imposed is one left to the discretion of the trial judge and will not be disturbed absent a showing of abuse of that discretion. (*People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793.) We find no such abuse of discretion and consequently affirm defendant's sentence.

The judgment of the trial court is affirmed.

Affirmed.

LINN, P. J., and JIGANTI, J., concur.