**Jacinto Victorio BADOINO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2048.**

Court of Appeals of Alaska.

Jan. 5, 1990.

Rex Lamont Butler, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Jacinto V. Badoino was convicted of one count of misconduct involving a controlled substance in the third degree, a class B felony, in violation of AS 11.71.030(a)(1). Badoino appeals his conviction and the forfeiture of certain money as part of his sentence. We affirm in part and remand for a hearing on the issue of forfeiture.

■ Badoino argues that the trial court erred in failing to suppress evidence obtained as a result of a search of his home, on the ground that the search warrant was not supported by probable cause. Probable cause to issue a search warrant exists when "reliable information is set forth in sufficient detail to warrant a reasonably prudent [person] in believing that a crime has been or was being committed." *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973) (citation omitted). A nexus must be shown between the place to be searched, the criminal activity, and the items sought. *Snyder v. State*, 661 P.2d 638, 645 (Alaska App.1983). The magistrate's finding of probable cause will only be overturned if there is an abuse of discretion. *State v. Bianchi*, 761 P.2d 127, 130 (Alaska App.1988).

■ We find no abuse of discretion in this case. The magistrate was presented with evidence that: (1) on two occasions, Badoino had shown up at the Palace Hotel shortly before cocaine was sold to undercover agents, but after the drugs had been requested by the agents and while the agents were told they needed to wait for the source to arrive; (2) Michael Allen, the person who sold the drugs to the undercover agents, told them that his source drove a cab and lived on Dowling Road near the Department of Motor Vehicles; (3) on these occasions Badoino was followed to a residence on Dowling Road near the Department of Motor Vehicles following his brief visit to the Palace Hotel; and (4) the investigation had revealed that Badoino drove a cab and lived on Dowling Road. This evidence was sufficient to warrant a reasonably prudent person's belief that drugs would be found in Badoino's residence on Dowling Road.[1]

Badoino argues that the trial court erred in refusing to dismiss Count XV of the indictment charging him with possession of approximately five ounces of cocaine with intent to deliver. He reasons that there was insufficient admissible evidence presented to the grand jury to establish any connection between him and the illegal

---

1. Badoino also argues that the officers went beyond the scope of the search warrant by opening a safe in his residence. The place specified for the search warrant was Badoino's residence. The object of the search was drugs. Police officers were limited in the search as to places reasonably likely to reveal the items listed in the search warrant. *Anderson v. State*, 555 P.2d 251, 261 (Alaska 1976). Since drugs and paraphernalia could have easily been stored in the safe, the scope of the search warrant was not exceeded. *See also* 2 LaFave, *Search and Seizure* § 4.10, at 313–14 (2d ed.1987) (the scope of a search warrant is not automatically exceeded simply because "some additional act of entry or opening may be required." A search warrant which describes only the building may support a search of "desks, cabinets, closets, and similar items."). *See also United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982) (footnote omitted) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.").

activities at the Palace Hotel. He also argues that the indictment should have been dismissed due to prosecutorial misconduct. Specifically, Badoino argues that the prosecutor knowingly presented perjured testimony to the grand jury as well as "highly prejudicial evidence with no probative value."

A grand jury indictment will be upheld if the evidence presents a sufficiently detailed account of criminal activity and the defendant's participation in the activity, if unexplained or uncontradicted, would support a conviction of the offense charged. *Lupro v. State,* 603 P.2d 468, 473 (Alaska 1979).

The evidence presented in support of Count XV consisted of the following: (1) Anchorage Police Department (APD) Investigator Cress testified that when Badoino's residence was searched "what appeared to be 15 clear plastic baggies of cocaine" were found; (2) Investigator Cress testified the substance in four of those baggies was tested (the other baggies were not tested) and found to be cocaine. Since we have concluded that the search warrant was valid, it necessarily follows that this evidence uncovered by the search warrant was properly considered by the grand jury. Given the quantity of cocaine, 142.98 grams, and the nature of its packaging, there was sufficient evidence before the grand jury to warrant return of an indictment against Badoino.

During the grand jury proceedings, Investigator Cress testified that he found "approximately between $5,000 and $6,000 at Badoino's house." This was apparently in error since only $2,500 was in fact recovered. The trial court found that this discrepancy would not have affected the grand jury's determinations. We agree. There is nothing in the record to suggest that this was an intentional misrepresentation or that the prosecutor knowingly conspired with the officer to inflate the value of money actually found. Under the circumstances, we find no conscious use of perjured testimony. Badoino also contends that references by the district attorney to his tax returns were inaccurate. The tax returns were not made a part of the appellate record. Nevertheless, the trial court did review them and concluded that they were not sufficiently misleading to affect the grand jury's deliberations. Under the circumstances, we are not satisfied that Badoino has established prejudicial error.

Toward the end of the grand jury proceedings, the following conversation took place.

> Q And does it appear that he [Badoino] has darker skin and may be from another country than the United States? Darker skin than us Caucasians?
>
> A It appears he could be Hispanic or South American or something of that type of a heritage.
>
> Q And is that what you deduced also from his name?
>
> A Yes.

Badoino claims that by these remarks the prosecutor sought "to introduce the specter of racial prejudice into these proceedings."

While the prosecutor's choice of words may have been unfortunate, we find no suggestion of racial prejudice. It appears that the prosecutor was attempting to use this evidence to identify Badoino as the person referred to by certain drug dealers as their source. Wang Yong Yin, a former employee of the Palace Hotel, had testified earlier in the grand jury proceedings that the manager of the hotel had "bought cocaine from some Dominican ... I mean, looks, appears to be Dominican." We find no error.

Badoino next argues that the court erred by failing to suppress the testimony of a special agent of the United States Army Criminal Investigation Division for violation of the Posse Comitatus Act. 18 U.S.C. § 1385 (1988). Badoino's arguments are identical to those we considered and rejected in *Moon v. State,* 785 P.2d 45 (Alaska App.1990). We adhere to our decision in *Moon* in this case, that no violation occurred because there was a substantial military purpose served by the investigation: interruption of the sale of illic-

it drugs to uniformed military personnel and, even had there been a violation, the application of the exclusionary rule would be inappropriate.

■ Badoino argues that the trial court erred by failing to sever his trial from that of his codefendants Byong Hak Kim and Hyo J. Moon. Badoino further argues that he was prejudiced by the trial court's failure to sever his trial from that of Kim and Moon under Alaska Criminal Rule 14 because there was little evidence linking him to the activities of the other defendants. He contends that, had the enormous amounts of evidence of the other defendants' criminal activities not been presented, Badoino would not have been convicted of possession with intent to deliver. At trial, Badoino moved to sever the theft counts, Counts II, III, and IV, from the drug counts. Severance was granted for Counts II and IV. Badoino received a judgment of acquittal on Count III.

Under the state's theory of the case, Badoino was the supplier of the cocaine sold out of the Palace Hotel. Two of the drug transactions in which Badoino was charged as a participant involved the other defendants. Under the circumstances, there was a close nexus between the claims against Badoino and the claims against the other defendants. Consequently, severance was not called for. We find no abuse of discretion. *Maynard v. State*, 652 P.2d 489, 491 (Alaska App.1982). We note that the trial court carefully instructed the jury on its obligation to consider each charge individually and to consider each defendant separately. *See Larson v. State*, 566 P.2d 1019, 1022–23 (Alaska 1977) (finding cautionary instruction cured prejudice which might otherwise result from improper inferences due to joinder).

■ Badoino objects to the introduction of certain charts as evidence in his case. He argues that they were hearsay. We disagree. During the course of the state's case-in-chief, various police officers wrote on charts summarizing the dates, times, and results of their surveillance of the defendants. The charts were prepared by the witnesses while on the stand and only sum-marized their testimony. While it might have been preferable for the court to have kept the charts out of the jury room, we find no prejudicial error.

■ Badoino next argues that the trial court erred in instructing the jury that it had to reach a unanimous verdict on the offense charged before considering lesser-included offenses. This issue is controlled by *Dresnek v. State*, 718 P.2d 156 (Alaska 1986), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 679, 93 L.Ed.2d 729 (1986). We find no error.

■ Badoino argues that the trial court erred in failing to inform the foreperson of the jury that alternatives for her travel plans were being taken care of (*i.e.*, that she would not be penalized by the airline if she missed her flight because of jury deliberations). The issue was never presented to the trial court and we find no plain error. *See* Crim.R. 47(b).

Badoino's final argument is that the trial court erred in ordering forfeiture of cash found in his residence during the execution of the search warrant.

Alaska Statute 17.30.112 provides in relevant part:

(a) Property listed in AS 17.30.110 may be forfeited to the state either upon conviction of the defendant of a violation of this chapter or AS 11.71, or upon judgment of a court in a separate civil proceeding in rem. The court may order a forfeiture in the in rem proceeding if it finds that an item specified in AS 17.30.-110 was used during, or in aid of a violation of this chapter or AS 11.71.

Alaska Statute 17.30.110 provides:

The following may be forfeited to the state:

. . .

(6) money, securities, negotiable instruments, or other things of value used in financial transactions derived from activity prohibited by this chapter or AS 11.71. . . .

Alaska Statute 17.30.116 sets out procedures to be followed in forfeiture proceedings. It is not clear, however, whether it

applies only to *in rem* proceedings or whether it also was intended to apply where forfeiture is sought as part of a criminal prosecution. Alaska Statute 17.-30.116(c) provides:

> Questions of fact or law raised by a notice of forfeiture action and answer of a claimant in an action commenced under this section must be determined by the court sitting without a jury. This proceeding may be held in abeyance until conclusion of any pending criminal charges against the claimant under this chapter or AS 11.71.

We note that under federal practice, forfeiture proceedings may also be sought either as part of an ongoing criminal prosecution or as part of a separate *in rem* proceeding. *See, e.g.*, Note, *State and Federal Forfeiture of Property in Drug Transactions*, 92 Dickinson L.Rev. 461 (1988). It appears, however, that where forfeiture is sought in a criminal proceeding, the matter must be presented by way of special verdict to the jury. *See* Federal Rule of Criminal Procedure 31(e). While Alaska Rule of Criminal Procedure 31 is based upon the federal rule, there is no comparable provision for special verdicts in drug enforcement proceedings.

Badoino argues that because he was convicted of possession of cocaine for sale and not a specific sale, money found on his premises in the vicinity of the cocaine seized cannot be forfeited. This would not seem to follow. *See State v. Ronngren*, 356 N.W.2d 903 (N.D.1984) (defendant convicted of possession of narcotics with intent to sell, money found at the same time as the drugs properly forfeited). However, we are concerned that no rule of court, supreme court decision, or decision of this court sets out procedures to be followed where forfeiture is sought as part of an ongoing criminal proceeding. The majority of the Alaska cases dealing with forfeiture have involved separate *in rem* proceedings. *See, e.g., Resek v. State*, 706 P.2d 288

(Alaska 1985); *One Cocktail Glass v. State*, 565 P.2d 1265 (Alaska 1977).

We are satisfied that due process requires that a criminal defendant be given advance notice of the specific property which the state seeks to have forfeited. Where the property is not contraband, the defendant should be informed of the connection the state will attempt to prove between the property to be forfeited and illegal activity. The defendant is also entitled to know in advance the steps he or she must take in order to contest forfeiture, who will have the burden of proof, and what the burden will be. Finally, a reasonable opportunity must be afforded the defendant to resist forfeiture. The court should make findings of fact regarding contested issues and set out its conclusions of law.[2]

It is not clear from the trial court's remarks whether it considered forfeiture a jury question or a question to be determined by the court based on its own findings of fact. *See, e.g.*, Federal Rule of Criminal Procedure 31(e) (making this a jury issue where forfeiture is sought as part of the criminal conviction). The trial court found that both the automobiles Badoino used and the cash he possessed were related to cocaine transactions. The court felt that he could not forfeit the vehicles because the jury had acquitted Badoino of the counts involving the use of the automobiles. It is not clear upon what basis the trial court concluded that the money found in Badoino's possession was "part and parcel" of his cocaine possession, *i.e.*, what the nexus the court found between the money and possession of illegal drugs. Nor is it clear what burden of proof the court applied and on which party it was placed. *Compare* the burden of proof in civil *in rem* proceedings, set out in *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.1984), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). If Alaska had previously adopted a rule placing the burden on Badoino to show

---

**2.** We recommend that the Supreme Court Criminal Rules Committee study this problem and propose an appropriate rule for consideration by the supreme court as an amendment to the criminal rules.

that the money was not the fruit of illegal activity, it would be possible to simply affirm the judgment in this case on the basis that he had not met his burden of proof. *See People v. Anderson*, 74 Ill.App.3d 363, 30 Ill.Dec. 173, 179–80, 392 N.E.2d 938, 944–45 (1979); *Ronngren*, 356 N.W.2d at 905–06 (N.D.1984). No such rule has been adopted. The parties have not briefed this issue. We express no view as to how the issues should be resolved. The trial court should resolve the procedural issues after argument. We believe that in the interests of justice, the forfeiture issue should be remanded to the trial court to hold further hearings. The trial court should indicate in advance which party has the burden of proof on the forfeiture issue. Once a hearing is concluded and argument heard, the trial court should make findings of fact and conclusions of law indicating what evidence it relied on in determining the issues.

The judgment of the superior court is AFFIRMED in part, and the forfeiture issue is REMANDED to the superior court for further proceedings.